ST. CHARLES COUNTY,
et al., Appellants,

v.

DIRECTOR OF REVENUE,
et al., Respondents.

BERNADETTE BUSINESS FORMS,
INC., et al., Respondents,

v.

DEPARTMENT OF REVENUE
and Director of Revenue,
Appellants.

No. 79616.

Supreme Court of Missouri,
En Banc.

Jan. 27, 1998.

Edward J. Hanlon, Deputy City Counselor, Mark Lawson, Asst. City Counselor, Patricia Hageman, St. Louis, Jeremiah W. (Jay) Nixon, Atty. Gen., Edward F. Downey, Asst. Atty. Gen., Evan Buchheim, Asst. Atty. Gen., Jefferson City, James H. White, Deputy Co. Counselor, Cynthia L. Hoemann, Asst. Co. Counsler, Clayton, Joann Leykam, County Counselor, St. Charles, Patrick Cronan, Gary Markenson, Columbia, Walter J. O'Toole, Kansas City, Rollin J. Moerschel, V. Scott Williams, St. Charles, for Appellants.

Thomas C. Walsh, Juan D. Keller, Elizabeth C. Carver, St. Louis, James C. Owen, Katherine S. Walsh, Chesterfield, for Respondents.

LIMBAUGH, Judge.

This is an appeal from three cases consolidated before the Cole County Circuit Court involving refunds of local use taxes. The cases were filed in the wake of *Associated Industries of Missouri v. Director of Revenue*, 918 S.W.2d 780 (Mo. banc 1996), in which this Court held that the local use tax statute, section 144.748,[1] was unconstitutional in its entirety.

The saga of litigation began in 1991 when the Missouri General Assembly enacted section 144.748, which imposed a statewide local use tax. Before the local use tax was first implemented, Associated Industries of Missouri ("AIM") challenged its constitutionality, claiming that it violated the Commerce Clause of the United States Constitution. The circuit court found that section 144.748 was constitutional, and this Court affirmed

---

1. References to 144.748 refer to RSMo Supp. 1991. All other statutory references are to RSMo 1994.

that decision in *Associated Industries of Missouri v. Director of Revenue*, 857 S.W.2d 182 (Mo. banc 1993) ("*AIM I*"). Specifically, this Court held that the fact that the local use tax imposed a greater burden than the local sales tax in certain localities did not violate the Commerce Clause if the statewide burden of the use tax was less than the statewide burden of local sales taxes. *Id.* at 186. However, the United States Supreme Court granted certiorari and reversed the judgment of this Court in *Associated Industries of Missouri v. Lohman*, 511 U.S. 641, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994) ("*AIM II*"). The Supreme Court rejected this Court's statewide-burden approach to Commerce Clause analysis and held that the local use tax scheme was unconstitutional in those localities where the local use tax exceeded the local sales tax. *Id.* at 654, 114 S.Ct. at 1824. The Supreme Court did not consider a specific remedy but, instead, remanded to this Court for further proceedings consistent with its opinion. *Id.* at 656–57, 114 S.Ct. at 1825–26. This Court then vacated its prior mandate and, in turn, remanded the case to the Cole County Circuit Court to determine the effect of the Supreme Court's decision under Missouri law. By way of declaratory judgment, the circuit court held that the local use tax was not unconstitutional in its entirety and that the tax could be enforced in those districts where the local sales tax was equal to or greater than the amount of the local use tax. On appeal, this Court reversed, holding that section 144.748 could not be constitutionally applied as written and was, thus, unconstitutional in its entirety. *Associated Industries of Missouri v. Director of Revenue*, 918 S.W.2d 780 (Mo. banc 1996) ("*AIM III*").[2]

Following the initial attack on the constitutionality of section 144.748, the Director of Revenue refused to distribute proceeds from the local use tax to political subdivisions unless they executed an agreement promising to reimburse the Director in the event that the local use tax was found unconstitutional and refunds were required. Despite the Director's instructions, a number of political subdivisions refused or otherwise failed to

execute the required agreements, and as a result, they received none of the use tax proceeds. In response to this situation, and to ensure a funding mechanism in the event refunds were required, the General Assembly enacted section 144.749, which states in pertinent part:

> In the event section 144.748 is ultimately found to be unconstitutional, the director of revenue may withhold from future distributions due political subdivisions an amount equal to such political subdivision's share, including interest, of the distribution from the local use tax fund since its inception.

Once section 144.749 became effective, the Director began distributing funds to those political subdivisions that had failed to execute reimbursement agreements.

After the decision in *AIM III* in 1996, the Department of Revenue ("DOR") began honoring applications for refunds filed by taxpayers who had paid local use taxes within the previous three years. Relying on section 144.749, the DOR also indicated its intention to withhold amounts otherwise due to political subdivisions in order to pay for these refunds. Before the DOR could initiate this plan, several lawsuits were filed seeking to clarify the consequences of this Court's decision that 144.748 was unconstitutional in its entirety. One lawsuit, *Bernadette Business Forms, Inc. v. Department of Revenue*, filed by several businesses, sought to compel the Director of Revenue to issue refunds of amounts they had paid under section 144.748. Two other lawsuits, *St. Charles County v. Lohman* and *City of St. Peters v. Lohman*, filed by political subdivisions, sought to enjoin the Director from refunding local use taxes that were paid prior to the decision in *AIM III*. These three cases were consolidated for trial before the Cole County Circuit Court. Additional parties were granted leave to intervene, including other political subdivisions and an individual taxpayer. Four issues were presented to the circuit court: (1) whether the decision in *AIM III* was an "unexpected decision" under section

---

**2.** For a more detailed procedural history, see the prior decisions of this Court and the United

States Supreme Court in *AIM I, II,* and *III*.

143.903 and, thus, would foreclose the possibility of taxpayer refunds; (2) whether section 144.749 violated the provisions of the Hancock Amendment stated in article X, sections 21 and 22 of the Missouri Constitution; (3) whether section 144.749 violated article X, section 1, of the Missouri Constitution pertaining to state taxing authority; and (4) whether refunds were available under section 144.190 following the 1996 repeal of section 144.748. The circuit court granted judgment in favor of the businesses in the first suit and granted judgment in favor of the Director of Revenue in the second two suits. This appeal followed. Jurisdiction in this Court is based on the necessity to construe several sections of the state revenue laws. Mo. Const. art. V, sec. 3.

In essence, the current dispute consists of a three-way conflict between various businesses that seek a tax refund ("Taxpayers"), the Director of Revenue who seeks to avoid payment of a tax refund ("Director"), and various political subdivisions that seek to avoid footing the bill for any tax refund that is required ("Local Taxing Authorities").

## I. UNEXPECTED DECISION

■ The Director and the Local Taxing Authorities claim that no refunds are due on local use taxes paid prior to the decision in *AIM III* because *AIM III* was an "unexpected decision" under section 143.903, which states in pertinent part:

1. Any provision of law to the contrary notwithstanding, an unexpected decision by or order of a court of competent jurisdiction or the administrative hearing commission shall only apply after the most recently ended tax period of the particular class of persons subject to such tax imposed by chapters 143 and 144, RSMo, and any credit, refund or additional assessment shall be only for periods after the most recently ended tax period of such persons.

If *AIM III* was an "unexpected decision" under this statute, then refunds for all tax years prior to 1996, the year *AIM III* was decided, would not be authorized. However,

for the reasons that follow, this Court holds that section 143.903 is not applicable.

Section 144.749, the General Assembly's response to the original 1991 local use tax litigation, acts as an exception to section 143.903, the "unexpected decision" statute, so that section 143.903 does not apply at all in this case. There is an inherent conflict between the two statutes. Under section 143.903, if a tax decision is deemed to be unexpected, then any refund "shall be only for *periods after the most recently ended tax period.*" Sec. 143.903.1 (emphasis added). In contrast, section 144.749 provides that in the event section 144.748 is found unconstitutional, the director of revenue may withhold an amount (implicitly for refunds to taxpayers) equal to "the distribution from the local use tax fund *since its inception.*" Sec. 144.749 (emphasis added). Thus, section 143.903 limits refunds to periods after the determination of unexpectedness, while section 144.749 implicitly allows refunds dating back to the inception of the tax regardless of a subsequent determination of unexpectedness. Assuming *arguendo* that the decision in *AIM III* was unexpected, these sections could not be applied simultaneously because they reach contradictory results. Section 144.749 implicitly allows refunds for periods prior to the decision in *AIM* III while section 143.903 expressly forbids such refunds.

■ This Court has consistently held that when two statutory provisions are repugnant, "the later act ... operates to the extent of the repugnancy to repeal the first." *Morrow v. City of Kansas City,* 788 S.W.2d 278, 281 (Mo. banc 1990); *see also County of Jefferson v. Quiktrip Corporation,* 912 S.W.2d 487, 490 (Mo. banc 1995). However, repeal by implication is disfavored, and if two statutes can be reconciled then both should be given effect. *Matter of Nocita,* 914 S.W.2d 358, 359 (Mo. banc 1996). The crucial notion in applying the doctrine of repeal by implication is "the extent of the repugnancy" of the statutory provisions. Sections 143.903 and 144.749 are only repugnant to the extent that they concern decisions involving section 144.748. Thus, section 144.749 operates to repeal section 143.903 only in those instances where it would apply to deci-

sions involving section 144.748. In other words, section 144.749 acts as an exception to section 143.903 regarding any decisions that pertain to section 144.748.

The legislative exception recognized in this decision is analogous to the legislative exception recognized by this Court in *Quiktrip*, 912 S.W.2d at 490, which involved a conflict between two series of tax statutes. The first series stated that certain tax revenue received by Jefferson County was to be held in a trust fund for law enforcement and capital improvements. *Id.* at 488–90. A later series of statutes indicated that 50% of additional revenue generated in association with designated tax increment finance districts, which would normally have been included in the trust fund, was to be paid by Jefferson County to the City of Herculaneum. *Id.* This Court recognized that the statutes were inconsistent, but noted the necessity of applying both statutes to the fullest extent possible. *Id.* at 490. In this regard, this Court stated that "[t]he only rational way to reconcile each of the statutes [was] to conclude that the legislature intended to create an exception to the [earlier group of statutes]." *Id.* This same line of reasoning applies in this case. Sections 143.903 and 144.749 are clearly inconsistent, but both statutes should be applied to the fullest extent possible. The only rational way to apply both statutes is to conclude that the legislature intended for section 144.749 to create an exception to section 143.903.

In sum, whether the *AIM III* decision was an "unexpected decision" under section 143.903 is irrelevant because section 143.903 has been superseded by section 144.749. Hence, section 143.903 does not limit the availability of refunds in this case.

## II. VIOLATION OF THE HANCOCK AMENDMENT

The Local Taxing Authorities claim that the Director does not have authority under section 144.749 to withhold amounts necessary for refunds because section 144.749 violates parts of the "Hancock Amendment" stated in article X, sections 21 and 22, of the Missouri Constitution.

### A.

■ Article X, section 21, states as follows:

A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the general assembly or any state agency of counties or other political subdivisions, unless a state appropriation is made and disbursed to pay the county or other political subdivision for any increased costs.

A violation of section 21 is established when two elements are present: "(1) a new or increased activity or service is required of a political subdivision by the State and (2) the political subdivision experiences increased costs in performing that activity or service." *Miller v. Director of Revenue*, 719 S.W.2d 787, 788–89 (Mo. banc 1986); *see also City of Jefferson v. Missouri Department of Natural Resources*, 916 S.W.2d 794, 795 (Mo. banc 1996).

■ The Local Taxing Authorities argue that section 144.749 violates article X, section 21, because the withholding of future distributions due to them is equivalent to the imposition of a "new or increased activity or service." To the contrary, section 144.749, by its express terms, applies only to the Director of Revenue, and does not require the Local Taxing Authorities to take any action and clearly does not require them to undertake any new or increased activity or service. Accordingly, this Court holds that no "new or increased activity or service" is involved in this case.

### B.

■ Article X, section 22, states as follows:

Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution when this section is adopted or from increasing the current levy of an existing tax, license or fees, above that current levy authorized by law or charter when this section is adopted without the approval of the required majority of the

qualified voters of that county or other political subdivision voting thereon.

Section 22 requires voter approval when two elements are established: (1) action is taken by a political subdivision and (2) that action involves the levying of a new tax, license or fee. The Director's decision to withhold funds from the Local Taxing Authorities does not meet either of these elements. The action in dispute is an action of an agency of the state, not an action of a political subdivision. In addition, the Director's decision constitutes, at most, a decision to redistribute the revenue derived from the local use tax, and, as such, does not constitute the "levying" of a new tax. *County of Jefferson v. Quiktrip Corporation*, 912 S.W.2d 487, 491 (Mo. banc 1995); *Berry v. State*, 908 S.W.2d 682, 685 (Mo. banc 1995). Thus, the Director's decision to withhold funds clearly falls outside the scope of the restrictions imposed by section 22.

### III. VIOLATION OF MISSOURI CONSTITUTION ARTICLE X, SECTION 1

The Local Taxing Authorities also claim that the Director does not have authority under section 148.749 to withhold amounts necessary for refunds because section 148.749 violates article X, section 1, of the Missouri Constitution. Section 1 provides that the state has the power to levy taxes for state purposes and that local governments have the power to levy taxes for local purposes. The Local Taxing Authorities argue that the Director's proposed action under 144.749 violates section 1 because the Director is attempting to use local funds for a state purpose. As further support for this argument, the Local Taxing Authorities cite article X, section 10(b), of the Missouri Constitution, which provides that funds collected by the state may be distributed to local governments for local purposes. As we understand the section 10(b) argument, because there is no counterpart to section 10(b) that allows the use of local funds for state purposes, by implication the Director cannot withhold local funds to make refunds of the statewide local use tax.

The Local Taxing Authorities fail to recognize that section 1 pertains to the levying of taxes, not the withholding of taxes that have already been levied and collected. The withholding of these taxes is not a levy. As to the section 10(b) argument, the mere fact that the Missouri Constitution lacks an express provision for the Director's action does not render the Director's action unconstitutional. The general assembly may grant the Director powers that are not prohibited by the Missouri Constitution. *Fust v. Attorney General*, 947 S.W.2d 424, 430 (Mo. banc 1997) ("Absent a [constitutional] prohibition, the general assembly's legislative power is plenary"). Thus, section 144.749 does not violate sections 1 and 10(b).

### IV. AVAILABILITY OF REFUNDS UNDER SECTION 144.190

Finally, the Local Taxing Authorities contend that refunds under section 144.190 are not available to taxpayers who failed to assert their claim prior to the repeal of section 144.748 on May 21, 1996. We agree. "[I]n the absence of statutory authority, taxes voluntarily, although erroneously paid, albeit under an unconstitutional statute, cannot be refunded." *Community Federal Savings & Loan Association v. Director of Revenue*, 752 S.W.2d 794, 797 (Mo. banc 1988). Thus, even though section 144.748 has been found unconstitutional, refunds for taxes paid under this statute are only available to the extent that there is statutory authority providing for such refunds. Prior to its repeal, section 144.748 indirectly incorporated the refund provision of section 144.190, which provides for a three-year statute of limitations and statutory interest. However, when section 144.748 was repealed, the incorporation of section 144.190 was necessarily repealed as well. Thus, no refunds are available under section 144.190 after the date of the repeal, although refund claims under section 144.190 made prior to the repeal of section 144.748 are enforceable. Nonetheless, taxpayers who failed to seek a refund prior to the repeal of section 144.748 may still seek a refund under section 136.035. This general refund provision is subject to a two-year statute of limitations and does not provide for statutory interest.

## V. CONCLUSION

In summary, we hold that the Director must provide refunds for payments made under section 144.748 prior to the decision in *AIM III*. We further hold that, under section 144.749, the Director may withhold amounts otherwise due to political subdivisions to the extent such withholding is necessary to cover the expense of these refunds. Refund claims that were made prior to the repeal of section 144.748 on May 21, 1996, may proceed under section 144.190. Refund claims made after May 21, 1996, may only proceed under section 136.035. In these regards, the judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded for proceedings consistent with this opinion.

All concur.