The Honorable Gus Wingfield, Chairman CMRS Emergency Telephone Services Board c/o State Auditor 230 State Capitol Little Rock, Arkansas 72201
Dear Mr. Wingfield:
You have requested an Attorney General opinion concerning various matters relevant to the CMRS[1] Emergency Telephone Services Board, which was created by A.C.A. § 12-10-318(b)(2). That statute also levies a telephone service charge on all CMRS connections, and authorizes the Board to administer the revenues collected from this charge. The statute further directs the manner in which the Board is to administer these revenues.
You have presented the following questions:
 (1) Under A.C.A. § 12-10-318(b)(2)(A) and other applicable law, is the CMRS Emergency Telephone Services Board allowed to have more than one account, and is the Board allowed to use other investment tools such as certificates of deposit to maintain the cash revenues collected from the service charge levied on the CMRS connections?
 (2) Does A.C.A. § 12-10-318 or any other applicable law require a particular use of the interest earned on the revenues from the service charge levied on CMRS connections? If so, what is that use? If no particular use is designated, can the Board use the interest for administrative expenses in addition to the one percent of the fees collected as designated in A.C.A. § 12-10-318(b)(2)(B)(vi)?
 (3) Under A.C.A. § 12-10-318(b)(2)(B), does the Board have the authority to set a limit on the amount of time which may pass between a PSAP or CMRS provider's contracting for the purchase of equipment of services to comply with FCC requirements, and that PSAP or CMRS provider's application to the Board for reimbursement for the cost of purchase?
 (4) Is this Board subject to the provisions of the Arkansas Administrative Procedure Act)A.C.A. § 25-15-201 et seq.)?
RESPONSE
Question 1 — Under A.C.A. § 12-10-318(b)(2)(A) and other applicable law,is the CMRS Emergency Telephone Services Board allowed to have more thanone account, and is the Board allowed to use other investment tools suchas certificates of deposit to maintain the cash revenues collected fromthe service charge levied on the CMRS connections?
It is my opinion that the A.C.A. § 12-10-318 requires the CMRS Emergency Telephone Services Board to maintain one interest-bearing account only. As explained more fully below, my conclusion regarding this issue is based upon the unambiguous language of the statute, and upon the disposition scheme that is set forth in the statute.
A.C.A. § 12-10-318 requires the Board to establish "an" interest-bearing account. See A.C.A. § 12-10-318(b)(2)(A). Moreover, the language of the statute appears to contemplate that all revenues from the service charge will be deposited in that one account. I base this conclusion on the following language from the statute: "The responsibilities of the Board shall be as follows: . . . (B) Manage and disburse the funds from theaccount in the following manner:. . . ." (A.C.A. § 12-10-318((b)(2)(B) (emphasis added.) The disbursement scheme that follows accounts for 100% of the revenues, thus leading to the conclusion that all of the revenues must be deposited in "the" account. The Arkansas Supreme Court has repeatedly held that the words in statutes should be interpreted just as they read, and should be given their common meanings in ordinary usage.See Leathers v. Cotton, 332 Ark. 49, 961 S.W.2d 49 (1998).
Accordingly, I must conclude that the Board is required to establish and maintain only one interest-bearing account.
It should be noted, however, that the statute does not prohibit a single account that encompasses multiple investment options, including certificates of deposit. It is therefore my opinion that the funds can be placed in an account from which the funds are invested in a diversity of interest-bearing instruments. The only restriction on such an account would be that the funds must be available for disposition in accordance with the requirements of A.C.A. § 12-10-318.
Question 2 — Does A.C.A. § 12-10-318 or any other applicable law requirea particular use of the interest earned on the revenues from the servicecharge levied on CMRS connections? If so, what is that use? If noparticular use is designated, can the Board use the interest foradministrative expenses in addition to the one percent of the feescollected as designated in A.C.A. § 12-10-318(b)(2)(B)(vi)?
It is my opinion that the interest earned on the revenues from the service charge levied on CMRS connections must be used in accordance with the requirements of A.C.A. § 12-10-323. That statute sets forth certain required expenditures of any revenues generated pursuant to A.C.A. §12-10-318 through -321. It is my opinion that because the interest-bearing account is required by A.C.A. § 12-10-318, any interest earned on the revenues from the service charge is revenue "generated pursuant to A.C.A. § 12-10-318," and therefore must be spent in accordance with the requirements of A.C.A. § 12-10-318.
The required expenditures are stated as follows:
12-10-323. Authorized expenditures of revenues.
 (a) Any revenue generated pursuant to §§ 12-10-318—12-10-321 may be expended only in direct connection with the provision of 911 services and only for the following purposes:
 (1) The engineering, installation, and recurring costs necessary to implement, operate, and maintain a 911 telephone system;
 (2) The costs necessary for forwarding and transfer capabilities of calls from the 911 public safety communication center to dispatch centers or to other 911 public safety communication centers;
 (3) Engineering, construction, lease or purchase costs to lease, purchase, build, remodel, or refurbish a 911 public safety communication center and for necessary emergency and uninterruptable power supplies for the center;
 (4) Personnel costs in the amount of seventy-five percent (75%) of the salary and benefits of each position charged with supervision and operation of the 911 public safety communication center and system;
 (5) Purchase, lease, operation, and maintenance of consoles, telephone, and communications equipment owned or operated by the political subdivisions and physically located within and for the use of the 911 public safety communication center and radio or microwave towers and equipment with lines which terminate in the center;
 (6) Purchase, lease, operation, and maintenance of computers, data processing equipment, associated equipment, and leased audio or data lines assigned to and operated by the 911 public safety communication center for the purposes of coordinating, forwarding of calls, dispatch, or recordkeeping of public safety and private safety agencies, for which the 911 public safety communication center is the public safety answering point and to provide information assistance to those agencies; and
 (7) Supplies, equipment, PSAP personnel training, vehicles and vehicle maintenance, if such items are solely and directly related to and incurred by the political subdivision in mapping, addressing, and readdressing a 911 system. Nothing in this subsection shall be interpreted or construed as authorizing a political subdivision to purchase emergency response vehicles, law enforcement vehicles or other political subdivision vehicles from such funds.
 (b) Expenditure of revenue generated by §§ 12-10-318—12-10-321 for purposes not identified in this section is expressly prohibited.
 (c) Appropriations of funds from any source other than §§ 12-10-318—12-10-321 may be expended for any purpose whatsoever and may supplement the authorized expenditures of this section and may fund other activities of the 911 public safety communication center not associated with the provision of emergency services.
A.C.A. § 12-10-323.
The interest earned on the revenue from the service charge must be spent in one of the ways set forth above.
It is my opinion that the use of revenues to supplement the 1% that is authorized for administrative expenses would not be permissible.
To interpret any section of A.C.A. § 12-10-323 as allowing such an expenditure would have the effect of rendering meaningless the provisions of A.C.A. § 12-10-318(b)(2)(B)(vi), authorizing the use of 1% of the revenues for administrative expenses. The Arkansas courts have held that statutes should not be interpreted in such a way as to require an assumption that the legislature enacted a useless or meaningless act.See, e.g., Death and Permanent Total Disability Trust Fund v. WhirlpoolCorp., 39 Ark. App. 62, 837 S.W.2d 293 (1992). By expressly authorizing the use of 1% of revenues for administrative expenses, the statute appears to limit expenditures for administrative expenses to 1%. This express limitation of 1% would have been unnecessary if the legislature had intended that additional amounts could be spent for that purpose, pursuant to A.C.A. § 12-10-323.
For that reason, I must conclude that interest earnings may not be used to supplement the 1% that is authorized for administrative expenses.
Question 3 — Under A.C.A. § 12-10-318(b)(2)(B), does the Board have theauthority to set a limit on the amount of time which may pass between aPSAP or CMRS provider's contracting for the purchase of equipment ofservices to comply with FCC requirements, and that PSAP or CMRSprovider's application to the Board for reimbursement for the cost ofpurchase?
It is my opinion that the Board does not have such authority.
Unlike other boards and commissions, the CMRS Emergency Telephone Services Board is not granted the authority to make rules and regulations or to make regulatory quasi-judicial or legislative decisions. The Board's sole role is to manage and report on funds collected and disbursed in connection with the provision of emergency telephone service.
With regard to reimbursement to providers, the statute provides as follows:
 (ii) Not less than fifty-eight percent (58%) of the total monthly revenues shall be held in the interest-bearing account solely for the purposes of complying with applicable requirements of FCC docket # 94-102. These funds may be utilized by the PSAPs and the CMRS providers licensed to do business in Arkansas for the following purposes in connection with compliance with the FCC requirements: upgrading, purchasing, programming and installing necessary data, hardware, and software. Invoices must be presented to the board in connection with any request for reimbursement and be approved by a majority vote of the board to receive reimbursement. Any invoices presented to the board for reimbursements of costs not described by this section may be approved only by a unanimous vote of the board. In no event shall any invoice be reimbursed for costs not related to compliance with applicable requirements of FCC docket # 94-102.
A.C.A. § 12-10-318(b)(2)(B)(ii).
The foregoing section of the statute on reimbursements requires reimbursements to providers for the purposes stated therein (and in some cases for other purposes), but it states no conditions for such reimbursements. In the absence of a statutory provision creating a time limitation for applications for reimbursement, and in the absence of any statutory authority for the Board to create such a condition, I must conclude that the Board cannot require that applications for reimbursement be presented within a particular time frame.
Question 4 — Is this Board subject to the provisions of the ArkansasAdministrative Procedure Act)A.C.A. § 25-15-201 et seq.)?
It is my opinion that although the CMRS Emergency Telephone Services Board technically falls within the definition of the term "agency," as used in the Administrative Procedure Act, see A.C.A. § 25-15-202(1), the Act governs activities that the Board does not have statutory authority to engage in, such as rule-making, and adjudicatory proceedings. Therefore, the fact that the Board may technically fall within the group of bodies who, by definition, are subject to the Act is irrelevant, given that the Act's provisions address activities in which the Board does not engage.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] "CMRS" stands for "commercial mobile radio service." See A.C.A. §12-10-303.