JAMES M. SMART, JR., Judge.
 

 The Office of Public Counsel appeals the circuit court’s affirmance of a Public Service Commission decision that reclassified certain Southwestern Bell services in specific exchanges as “competitive,” thereby decreasing regulation over their pricing. The Office of Public Counsel is joined in the appeal by several private telecommunications companies who intervened below. The Public Service Commission and Southwestern Bell appeal the circuit court’s reversal of the Commission’s decision that other Southwestern Bell services converted to “competitive” status by operation of law in 1999. We affirm the Commission’s decision as to question one and reverse and remand as to question two.
 

 Factual and Procedural Background
 

 In 1996, the Missouri Legislature passed Senate Bill 507 authorizing “alternative local exchange telecommunications companies” to begin providing basic local telecommunications service in competition
 
 *304
 
 with “incumbent local exchange telecommunications companies,” such as Southwestern Bell. That bill included provisions to ensure a level playing field for
 
 all
 
 providers by allowing incumbent local exchange companies the opportunity to gain freedom from traditional rate-of-return regulation. The intent of the legislation was to “bring the benefits of competition to all customers[,] to ensure that incumbent and alternative local exchange telecommunications companies have the opportunity to price and market [their] services to all prospective customers in any geographic area in which they compete[, and to] promote the goals of the federal Telecommunications Act of 1996....” § 392.200.4(2), RSMo.2000. The stated goal of the federal Telecommunications Act of 1996 is “to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies.” Public Law 104-104 (S.652), 110 Stat. 56, February 8, 1996.
 

 Senate Bill 507 first introduced the classifications of “alternative local exchange telecommunications companies” (ALECs) and “incumbent local exchange telecommunications companies” (ILECs) in Missouri.
 
 [1]
 
 Those classifications were adapted from the federal Telecommunications Act of 1996. Southwestern Bell Telephone (SWB) qualifies as a “large incumbent local exchange company,” whereas the newer companies are classified as “alternative local exchange companies” (also sometimes referred to as competitive local exchange companies or CLECs). As part of that bill, section 392.245 allows the Public Service Commission to reclassify an incumbent local exchange telephone company as “price-cap regulated” under specific conditions.
 

 In 1997, SWB sought and, following a hearing, was granted reclassification as a “price-cap” regulated company. It had previously been regulated as a “rate-of-return” company under section 392.240. Being reclassified as price-cap regulated reduced the amount of regulation over SWB’s prices. Additionally, the price-cap statute, section 392.245, includes a procedure whereby the individual services of a price-cap regulated company can achieve “competitive” status on an exchange-by-exchange basis. “Competitive” services are subject to the lowest degree of price regulation.
 

 This case arose in March 2001,
 
 [2]
 
 when the Commission opened an investigation into whether any of SWB’s services in any of its exchanges could be reclassified as “competitive” based on a finding of “effective competition” from the alternative companies. Under section 392.245.5, the Commission is required to make such a review no later than five years following the first certification of an alternative provider in any specific exchange.
 
 [3]
 
 In addition to
 
 *305
 
 SWB, the Office of Public Counsel
 
 [4]
 
 participated in the case. Also, several alternative local exchange telecommunications companies intervened in the case. The Commission held an evidentiary hearing beginning in September 2001.
 

 Following the hearing, the Commission issued its Report and Order on December 27, 2001, in which it found that certain SWB services in certain SWB exchanges should be reclassified as “competitive” based on a finding that there is “effective competition” from the alternative companies in those exchanges for those services. Those services are SWB’s core business services and related services in the Kansas City and St. Louis exchanges; SWB’s core residential services and related services in the Harvester and St. Charles exchanges; and Common Channel Signaling/Signaling System 7 (“SS7”) and Line Information Database (“LIDB”) services in all of SWB’s Missouri exchanges.
 

 The Commission also found that other SWB services that had earlier been classified as “transitionally competitive” had converted to “competitive” status in 1999 by operation of law. Those services consist of intraLATA
 
 [5]
 
 private line/dedicated services, intraLATA toll services, Wide Area Telecommunications Services (“WATS”) and 800 services, special access services, and certain operator services. The competitive classification applied to these specific services in all exchanges. SWB’s other services in the vast majority of its exchanges throughout Missouri were found
 
 not
 
 to be subject to “effective competition” and remain price-cap regulated.
 

 The Office of Public Counsel and the intervenors appealed the Commission’s decision to the Cole County Circuit Court. The circuit court affirmed the finding of “effective competition” and the reclassification of those specific services, but reversed the Commission’s determination that the old “transitionally competitive” services became “competitive” by operation of law. The court reasoned that those services fell under the new “price-cap” regulations when SWB became a “price-cap regulated” company in 1997, and that an “effective competition” analysis was necessary before those services could be reclassified as “competitive.” The court specifically found that the two statutory schemes are “directly inconsistent.”
 

 Public Counsel and the intervenors now appeal the circuit court’s affirmance of the Commission’s reclassification (pursuant to section 392.245) of certain SWB services as “competitive” based upon a finding of “effective competition.” SWB and the Commission appeal the circuit court’s reversal of the Commission’s ruling that certain other services of SWB (as to all exchanges) were automatically reclassified from “transitionally competitive” to “competitive” by operation of law in 1999.
 

 Standard of Review
 

 On appeal, this court reviews the Commission’s decision, not that of the circuit court.
 
 State ex rel. GS Tech. Operating Co., Inc. v. The Pub. Serv. Comm’n,
 
 116 S.W.3d 680, 687 (Mo.App.2003). Our function is two-fold: we must first determine whether the decision is lawful and then
 
 *306
 
 whether it is reasonable. Mo. Const, art. V, § 18;
 
 AT&T Communications of Southwest, Inc. v. Public Serv. Comm’n,
 
 62 S.W.3d 545, 548 (Mo.App.2001). The appellants bear the burden of showing that the decision is either unreasonable or unlawful.
 
 See
 
 § 386.430.
 

 In determining whether the order is lawful, we exercise unrestricted, independent judgment and correct any erroneous interpretations of law.
 
 State ex rel. Sprint Spectrum L.P. v. Mo. Pub. Serv. Comm’n,
 
 112 S.W.3d 20, 24 (Mo.App.2003);
 
 GS Tech.,
 
 116 S.W.3d at 687. Lawfulness is determined by whether statutory authority for the order exists, and all legal issues are reviewed
 
 de novo. State ex rel. AG Processing, Inc. v. Pub. Serv. Comm’n,
 
 120 S.W.3d 732, 734 (Mo. banc 2003).
 

 If the order is lawful, we must then determine whether it is reasonable.
 
 Sprint Spectrum, 112
 
 S.W.3d at 24. Reasonableness depends on whether the order is supported by competent and substantial evidence on the whole record; whether the decision was arbitrary, capricious, or unreasonable; or whether the Commission abused its discretion.
 
 Id.
 
 “The decision of the Commission on factual issues is presumed to be correct until the contrary is shown and we are obliged to sustain the Commission’s order if it is supported by substantial evidence on the record as a whole.”
 
 State ex rel. Atmos Energy Corp. v. Pub. Serv. Comm’n,
 
 103 S.W.3d 753, 759 (Mo. banc 2003).
 
 See Lagud v. Kansas City Bd. of Police Comm’rs,
 
 136 S.W.3d 786, 791 (Mo. banc 2004) (holding that the standard of review set forth in
 
 Hampton v. Big Boy Steel Erection, 121
 
 S.W.3d 220 (Mo. banc 2003), a workers’ compensation review, is applicable to other administrative proceedings, as well).
 

 “Effective Competition”
 

 Appellants Office of Public Counsel and the intervenors (hereafter collectively referred to as “Public Counsel” for convenience)' argue on appeal that the Commission’s decision to reclassify certain SWB services (business and related services in Kansas City and St. Louis; residential and related services in Harvester and St. Charles; and SS7 and LIDB in all exchanges
 
 [6]
 
 ) from price-cap regulated to “competitive,” based on a finding of “effective competition,” is unlawful and unreasonable. Public Counsel contends that such a finding is not supported by substantial or competent evidence in the record and, therefore, it is against the overwhelming weight of the evidence.
 

 Pursuant to section 392.245, before reclassifying those services as “competitive” and releasing them from price-cap regulation, the Commission was required to find that the services were subject to “effective competition.” That statute reads in relevant part:
 

 The commission shall, from time to time ... investigate the state of competition in each exchange where an alternative local exchange telecommunication company has been certified to provide local exchange telecommunications service and shall determine ....
 
 whether effective competition exists in the exchange for the various services
 
 of the incumbent local exchange telecommunications company. If the commission determines that effective competition exists ..., the
 
 *307
 
 local exchange telecommunications company may thereafter adjust its rates for such competitive services upward or downward as it determines appropriate in its competitive environment.
 

 § 392.245.5 (emphasis added). Although the term “effective competition” is not defined in the statutes, section 386.020(13) sets forth the factors the Commission must consider in making such a determination:
 

 (a) The extent to which services are available from alternative providers in the relevant market;
 

 (b) The extent to which the services of alternative providers are functionally equivalent or substitutable at comparable rates, terms and conditions;
 

 (c) The extent to which the purposes and policies of chapter 392, RSMo., including the reasonableness of rates, as set out in section 392.185, RSMo.,
 
 [7]
 
 are being advanced;
 

 (d) Existing economic or regulatory barriers to entry; and
 

 (e) Any other factors deemed relevant by the commission and necessary to implement the purposes and policies of chapter 392, RSMo.
 

 At the hearing, the Commission was presented with exhibits and extensive testimony from numerous witnesses, including telephone company employees, Commission staff, economists, and other experts. The Commission received substantial evidence that there are numerous alternative providers who have for several years been providing functionally equivalent or substitutable services throughout SWB’s Missouri exchanges at comparable rates, terms, and conditions;
 
 [8]
 
 that competitors can enter the market with little capital investment; that local market share gained by the alternative companies throughout the state was significant; that competition is greatest in the urban areas; that the market share for business services gained by competitors statewide exceeded twenty percent and was even greater in urban areas; and that SWB had experienced a declining trend for retail access lines, while at the same time the number of CLEC lines continued to grow.
 

 On December 27, 2001, the Commission issued its Report and Order, in which it made extensive findings (both general and specific) with regard to the status of competition between SWB and its competitors for seventeen categories of services in all of SWB’s 160 Missouri exchanges. The Commission considered substantial evidence relating to each of the five “effective competition” factors and engaged in a detailed analysis of each factor as applied to the specific services and ex
 
 *308
 
 changes in question. The Commission considered evidence about the number of carriers certified to provide service in each exchange; the number of carriers actually providing both resale and facilities-based service in the exchanges; the relative longevity of the those alternative carriers; the presence of CLEC-owned facilities; SWB’s loss of market share in the various exchanges; and the degree to which competitors had utilized pricing strategies to obtain substantial market share. The Commission also considered the impact of alternative, non-regulated providers and services, such as internet, wireless, cable TV, and satellite providers, but determined that the evidence was not sufficiently specific to establish “effective competition” from these services. The Commission looked at the specific Chapter 392 purposes “that customers pay only reasonable charges” and that “full and fair competition function as a substitute for regulation” by exerting discipline on prices. The Commission determined that the purposes and policies of Chapter 392 are advanced by the existence of effective competition and that effective competition can be seen in SWB’s loss of substantial market share; the increasing number of carriers; the longevity of those carriers; and the presence of CLEC-owned facilities in the exchanges. The Commission stated that the availability of resale and unbundled network elements in every SWB exchange provides an effective way for competitors to enter the market with little capital investment and noted that the regulatory barriers that once prevented competition clearly are disappearing. In its analysis of the relevant factors, the Commission also considered the additional factors: “customer benefits of additional pricing flexibility” and “presence of alternative non-regulated communications” (i.e., e-mail, cable broadband, and mobile phones). Finally, the Commission determined that its earlier findings in Case No. TO-99-227
 
 [9]
 
 — that SWB has fully complied with the requirements of section 271 of the federal Telecommunications Act of 1996 and that SWB’s local markets are “open to competition” — were relevant to its analysis here.
 

 The Commission explained that in an “effective competition” analysis, no single factor is determinative, but that the analysis must include “all relevant factors.” The Commission found that “effective competition” (when considered in the full context of sections 392.245.5 and 386.020(13)) “refers to” competition
 

 adequate to accomplish the purposes that were previously to have been accomplished by the cost floors and maximum prices and to produce the intended or expected results, namely accomplishing the “purposes and policies of chapter 392 ... as set out in section 392.185” over a sustained period running up to five years in the future.
 

 Quoting SWB’s witness, Economist Dr. Debra Aron, the Commission continued, “this means that ‘effective competition’ is competition that exerts
 
 sustainable discipline on prices
 
 and moves them to the competitive level of true economic cost” (emphasis added).
 

 Public Counsel attacks the Commission’s findings, arguing that the evidence presented with regard to the section 386.020(13) factors was insufficient to support the reclassification of any of SWB’s services as competitive. Public Counsel’s argument focuses primarily on the Commission’s statement that “effective competition” means:
 
 “competition that exerts
 
 
 *309
 

 sustainable discipline on pnces.”
 
 Public Counsel complains that after the Commission established this as its definition of “effective competition,” it proceeded to abandon that definition in making the determination as to whether effective competition exists. Instead, they argue, the Commission erroneously based its decision upon the mere
 
 existence
 
 of competition, evidence of SWB’s loss of “market share,” and other unrelated factors. Public Counsel contends that the ultimate purpose of the relevant factors analysis is to determine whether actual, not just potential, discipline on prices has been shown.
 

 According to Public Counsel, the record lacks evidence of sustainable discipline on SWB’s pricing due to competition. Public Counsel says, in fact, that the evidence shows that competition from the alternative providers has had no effect on SWB’s prices. Public Counsel points to testimony from a SWB witness that SWB “has had only limited price changes for most of its services since 1984” and that SWB “has no current plans to change its rates.” Public Counsel contends the Commission’s observation that “[SWBj’s witnesses provided very little evidence that competition has had any specific impact on [SWB]’s prices” is conclusive that competition from the alternative companies has exerted no “sustainable discipline” on SWB’s pricing. The evidence is therefore insufficient, according to Public Counsel, to establish that “effective competition” existed for the services and exchanges in question, and the order must be set aside.
 

 SWB and the Commission (hereafter referred to as “Respondents”) argue that SWB needed only to establish sufficient evidence to support the factors for “effective competition” in section 386.020(13) and that it did so. Respondents point out that the legislature did not enumerate pricing discipline as a factor to be considered. Also, the legislature did not attach disposi-tive weight to any one factor that it enumerated. The Commission may consider additional factors, but only if these factors are both relevant and necessary to implement the purposes and policies of Chapter 392, they say. They argue that the Commission should not consider an additional factor to the exclusion of the four listed factors. We agree.
 

 Despite Public Counsel’s complaints that the Commission’s findings focused too much on the “mere existence” of competition and SWB’s market share losses, this information was in fact relevant to the measurement of the “effective competition” factors. If SWB is losing market share on specific services in specific exchanges, that fact is evidence that those services are extensively available from alternative providers in those exchanges, that the alternative companies’ services are functionally equivalent or substitutable, and that economic or regulatory barriers to entry are not preventing the alternatives from competing. Contrary to Public Counsel’s complaints, the Commission did not limit its analysis to this evidence, but properly considered it in conjunction with all the evidence relating to the applicable factors.
 

 Public Counsel also contends that section 392.245.5 requires evidence that effective competition has caused price reductions
 
 prior to
 
 ending price-cap regulation over a service in an exchange. It is not a matter of projection, they say, but a matter of determining existing conditions by looking at what has happened so far. They point to no specific statutory language supporting their view. The Respondents point out that whether price discipline is “sustainable” (as opposed to “sustained”) and acts to move prices to the competitive level often can be determined only after the price-cap constraints on both SWB and its competitors are lifted
 
 *310
 
 and full and fair competition is allowed to exist for an extended period of time. Or, as the Circuit Court reasoned:
 

 The existence of price discipline is necessarily a predictive future judgment, as it is not until competitive status is found that a price cap company even has the full ability to change its rates as dictated by the competitive environment.
 

 In light of the statutory requirement that specific factors be considered in an “effective competition” analysis, we reject Public Counsel’s basic premise with regard to this point. We do not believe that the Commission was bound by its “price discipline” statement to find that competition necessarily has already caused a decline in SWB’s prices. As noted by the circuit court, the legislature has determined what factors the Commission must consider, and the Commission properly considered and applied those factors here. Demonstrated previous price reduction is not a legislative directive, and rejection of the Commission’s determination of “effective competition” and “competitive” reclassification of SWB’s services on this basis would be inconsistent with legislative intent. We believe it is sufficient that there was substantial evidence of the specified “effective competition” factors.
 

 The Commission is vested with broad discretion to weigh the factors and to assess their relative importance; It specifically stated that none of its findings as to the factors, standing alone, was sufficient for a finding of “effective competition.” Rather, the decision was based on the totality of its findings as to each of the factors, some of which included competition’s effect on pricing.
 

 The Commission’s decision, therefore, that certain SWB services are subject to effective competition in specific exchanges is both lawful and reasonable in that it is supported by substantial competent evidence in the record. Point denied.
 

 “Competitive” by “Operation of Law”?
 

 In 1992, SWB filed a petition seeking classification of certain services
 
 [10]
 
 as “transitionally competitive,” averring that the services met the requirements of section 392.370.1, in that they were “the same as, substitutable for, or equivalent to” competitive services provided by another carrier within its service territory.
 
 [11]
 
 In 1993, following a hearing, the Commission granted a “transitionally competitive” classification.
 
 [12]
 
 Three years later, in January 1996 (prior to the effective date of Senate Bill 507), the Commission — following a complaint filed by the Office of Public
 
 *311
 
 Counsel — extended the transitionally competitive status for an additional three-year period. The Commission did not further extend the transitionally competitive status in January 1999.
 

 Under section 392.870, a service classified as transitionally competitive automatically becomes classified as competitive three years after such designation unless the Commission extends the transitionally competitive status for an additional three-year period (for a maximum of two three-year extensions).
 
 See
 
 §§ 392.370.1 & .2. Thus, the Commission ruled in this case that those services automatically converted to competitive upon the expiration of the initial extension period in January 1999. Services that are classified as “competitive” are subject to a lower degree of price regulation than those that are “transitionally competitive.” See,
 
 e.g.,
 
 §§ 392.370.4, .5, .6, and .7; 392.500; and 392.510.
 

 Public Counsel argues that the Commission erred as a matter of law in so finding, in that it erroneously applied the old statutes governing a “rate-of-return company” instead of applying the newer statutory rules for a “price-cap regulated company,” which is what SWB became after 1997. Those “price-cap” rules require a finding, pursuant to section 392.245, that SWB’s services are subject to “effective competition” based upon an analysis of the factors enumerated in section 386.020(13). Public Counsel claims that the two systems of regulation are not compatible and cannot be intermixed.
 

 The circuit court agreed with Public Counsel and reversed the Commission’s order as to these services. The court found the statutory schemes to be “directly inconsistent” and determined that the legislature “intended” the new statutory scheme to “supplant” the old. The court concluded that although the legislature, when it enacted section 392.245, did not expressly repeal sections 392.361 and .370 or explicitly limit their applicability to non-price-cap regulated companies, the two regimes are “directly inconsistent” with one another.
 
 [13]
 
 The circuit court held that the Commission’s findings to the contrary violated its duty to make specific findings of effective competition for those services pri- or to reclassification and were, thus, unlawful. The court reversed and remanded as to those specific services.
 

 Respondents assert that the Commission was correct in finding that the services classified in 1993 as “transitionally competitive” automatically converted to “competitive” in 1999, despite SWB’s reclassification as a price-cap regulated company in 1997. Respondents contend that the two statutory schemes are not inconsistent, but that Senate Bill 507 merely introduced another means, or an “alternate path,” for a price-cap regulated ILEC to achieve competitive classification. According to Respondents, “[a] price cap regulated ILEC can proceed under the statewide mechanism available under Section 392.361, or it can proceed on an exchange by exchange basis pursuant to the mechanism contained in Section 392.245.” They also argue that
 
 *312
 
 Public Counsel’s position is inconsistent with applicable canons of statutory construction, in that the legislature did not explicitly repeal these older statutes and there is no evidence that the legislature intended an “implied repeal” of them. Finally, they contend that the standard -for finding a service “transitionally competitive” is so similar to the standard for a finding of “effective competition” that a new hearing to make the same findings is unnecessary.
 

 I. Statutory Analysis
 

 Are the statutes “directly inconsistent”? Where the resolution of a point turns on statutory construction, the primary role of this court is to ascertain the intent of the legislature from the language used and, if possible, give effect to that intent.
 
 State ex rel. Competitive Telecomm. v. Mo. Pub. Serv. Comm’n,
 
 886 S.W.2d 34, 39 (Mo.App.1994)
 
 (citing Abrams v. Ohio Pac. Exp.,
 
 819 S.W.2d 338, 340 (Mo. banc 1991)). Effect must be given to the legislative intent based on what the legislature said, not on what the legislature might have intended to say or inadvertently failed to say.
 
 Id.
 
 “When there is doubt and ambiguity as to the meaning of a statute, the courts give consideration to the practical construction placed upon the act by the agency charged with its administration, although such construction is not binding on the judiciary.”
 
 Id.
 

 Public Counsel contends that because SWB became subject to price-cap regulation under section 392.245 in November 1997, the Commission could no longer apply the classification process for rate-of-return companies under sections 392.361 and .370 to
 
 any of
 
 SWB’s services after that date. Public Counsel says that when SWB became price-cap regulated,
 
 all
 
 its services, including those that previously had been classified as “transitionally competitive,” converted to “price-cap regulated,” and an “effective competition” determination was thereafter required for each of those services. Thus, the January 1999 date was irrelevant. The price-cap statute clearly establishes a single process for lifting price caps under section 392.245.5, they say, and the statute provides no exception for any such services, but rather applies on its face to all of SWB’s services from the onset of price cap regulation. Public Counsel suggests that a simple reading of the statutes under both statutory regimes makes this readily apparent. We agree.
 
 [14]
 

 Senate Bill 507, the Act that introduced price-cap regulation in 1996, contemplates that once a large incumbent local exchange company becomes price-cap regulated, it will be regulated exclusively by price-cap regulations. As noted above, the Act first introduced and defined the classifications of “alternative local exchange telecommunications companies” and “incumbent local exchange telecommunications companies” in section 386.020. That statute also defined a “large local exchange telecommunications company.”
 
 [15]
 
 § 386.020(30). SWB is both a “large incumbent exchange telecommunications company” and a “large local exchange telecommunications company.”
 
 See
 
 Case No. TO-97-397,
 
 In the Matter of the Petition of Southwestern Bell Telephone Company for a Determinar tion that it is Subject to Price Cap Regular
 
 
 *313
 

 tion Under Section 392M5, RSMo Supp. 1996,
 
 6 Mo. P.S.C.3d 493, 508 (Sept. 16, 1997).
 

 In 1997, SWB sought and was granted status as a price-cap regulated company, pursuant to section 392.245.
 
 See id.
 
 at 509. Although SWB purportedly “sought” such status, the plain language of section 392.245 makes it clear that SWB, as a large ILEC, was mandated to be so regulated once the Commission made the required determination.
 
 See
 
 § 392.245.2. As explained by the circuit court, a large ILEC does not “elect” to become subject to price cap regulation. Section 392.245.2 provides that a large ILEC “shall be subject to” price-cap regulation once the Commission determines than an ALEC has been certified to provide basic local service and is providing such service in any part of the large ILEC’s service area. In Case No. TO-97-397, the Commission found that SWB had met these prerequisites and converted it from rate base/rate of return regulation to price cap regulation, effective September 26,1997. The Commission also ordered, pursuant to section 392.245, that “the maximum allowable prices which may be charged by [SWB] are the prices which were in effect on December 31, 1996.” TO-97-397, 6 Mo. P.S.C.3d at 510.
 

 When SWB converted to price-cap regulation, it became subject to all price-cap regulations contained in Senate Bill 507. Section 392.245.1 of that Act specifically provides that the maximum allowable prices for the telecommunications services offered by a price-cap regulated ILEC shall be established pursuant to the price-cap regulations and those “maximum allowable prices
 
 shall not be subject to increase except as otherwise provided in this section
 
 ” (emphasis added). Sections 392.361 and .370 are not referred to in that section. Those sections are not, in fact, included in Senate Bill 507.
 
 [16]
 
 The language of section 392.245.1 clearly restricts the ability of a large ILEC, subject to price-cap regulation, to increase its prices. Once the services of a price-cap regulated company are declared “competitive,” however, it is then entitled to adjust its prices upward or downward as it sees fit, pursuant to section 392.245.5.
 
 [17]
 
 Section 392.245 provides a method by which to achieve “competitive” status under the price-cap statutes. For SWB to have these services declared to be competitive in some other way would clearly violate the mandate of that statute in that it would allow SWB to increase its prices in a way other than pursuant to the provisions of the statute.
 

 Thus, we reject SWB’s argument that the two statutory schemes can be used inter-changeably,
 
 i.e.,
 
 “[a] price cap regulated ILEC can proceed under the statewide mechanism available under Section 392.361, or it can proceed on an exchange by exchange basis pursuant to the mechanism contained in Section 392.245.” We agree with the circuit court’s analysis that the two statutory schemes are “directly inconsistent” and that the provisions of the older statutes no longer apply to the services of a company that becomes subject to price-cap regulation prior to the expiration of their “transitionally competitive” status.
 

 II. Implied Repeal Argument
 

 Respondents contend that Public Counsel’s position necessarily rests on the
 
 *314
 
 premise that section 392.245’s enactment somehow effected an “implied repeal” of the earlier statutes. Respondents assert that there is no evidence to support the notion that the legislature intended an implied repeal and note that Missouri courts have long disfavored “repeal by implication,” citing,
 
 e.g., St. Charles County v. Director of Revenue,
 
 961 S.W.2d 44, 47 (Mo. banc 1998).
 

 Respondents point out that Senate Bill 507 explicitly repealed eight sections and enacted seventeen sections in their, place and that section 392.245.7 specifically provides that any “company regulated under this section shall not be subject to regulation under subsection 1 of section 392.240 [rate-of-retum regulation].” In light of these facts, they argue, a finding that the legislature intended to repeal sections 392.361 and .370 when it did not explicitly do so is not logical. Had the legislature deemed it necessary to repeal these sections or limit their application to non-price-cap regulated companies, SWB' says, it obviously knew how to do so.
 

 Public Counsel protests that it does not argue that Senate Bill 507 effected an “implied repeal” of sections 392.361 and .370. Rather, says Public Counsel, the older statutes are still applicable, but not to any service of a large ILEC (such as SWB) that has been reclassified as price-cap regulated. Public Counsel says that sections 392.361 and .370 remain valid parts of a regulatory system that still exists (the rate-of-return system); it just does not apply to SWB or to any price-cap regulated company.
 

 The applicable statutes confirm Public Counsel’s position. Under section 392.245.2,
 
 [18]
 
 a
 
 small
 
 incumbent local exchange telecommunications company has the option of electing to be regulated as a price-cap company or not. Since a small ILEC has the
 
 option
 
 of being regulated under the Act, it follows that if it chooses not to do so, it would continue to rely on the procedures found in sections 392.361 and .370 to seek “transitionally competitive” and then “competitive” classifications. Those statutes, therefore, could not be repealed by Senate Bill 507.
 

 ,
 
 III. “Transitionally Competitive” v. “Effective Competition” Standards
 

 Finally, Respondents suggest- that the requirements for a finding of “transitionally competitive” or “competitive” under the older statutes are so similar to the new “effective competition” factors that the Commission’s previous findings effectively negate the need for additional findings as to the new factors. In other words, if a service qualifies under one, it necessarily would also qualify under the other.
 

 Under section 392.361, the requirements for obtaining a classification of “transitionally competitive” or “competitive” are (1) the existence of “sufficient competition” to justify lesser regulation; (2) the lesser regulation must be consistent with the protection of ratepayers; and (3) the lesser regulation must promote the public interest.
 
 See
 
 §§ 392.361.2 and .4. Under section 392.370.1, a company must show that the service it seeks to reclassify is the same as, substitutable for, or equivalent to
 
 *315
 
 a service already classified under section 392.361 as either “transitionally competitive” or “competitive” in the same service area. These particular services were reclassified as “transitionally competitive” pursuant to section 392.370.1.
 

 For a “competitive” classification under price-cap regulation, section 392.245.5 requires the Commission to determine whether “effective competition” exists in each exchange for the various services of the ILEC. The Commission must consider: (1) the extent to which the services are available from alternative providers; (2) the extent to which the services of alternative providers are functionally equivalent or substitutable; (3) the extent to which the purposes and policies of chapter 392
 
 [19]
 
 are being advanced; (4) existing economic or regulatory barriers to entry; and (5) any other factors deemed relevant by the Commission and necessary to implement the Chapter’s purposes and policies. § 386.020(13).
 

 Respondents say Public Counsel ignores the fact that before reclassifying these specific services as transitionally competitive, the Commission already had to determine that they were subject to sufficient competition to justify a lesser degree of regulation, that such lesser degree of regulation is consistent with the protection of the rate payers, and that it promotes the public interest. These determinations actually were made only indirectly because SWB sought “transitionally competitive” status pursuant to section 392.370.
 

 Although we find that all SWB’s services became subject, exclusively, to price-cap regulation in 1997, we acknowledge that the state of competition with regard to these specific services was examined before they were classified as transitionally competitive in Case No. TO-93-116, 1 P.S.C.3d 479. That analysis took into consideration the purposes and policies of Chapter 392 as well.
 
 See id.
 
 The state of competition with regard to these services was again examined to some extent at the hearing in this case, Case No. TO-2001-467. In its Report and Order, the Commission made limited findings with regard to the state of competition for each of these services before declaring them automatically converted to “competitive” by operation of law in 1999.
 

 In remanding, we ask the Commission to re-examine the competitive status of these particular services by applying the “effective competition” factors to the evidence the Commission has already accumulated with regard to these services both from the 1993 “transitionally competitive” hearing in Case No. TO-93-116 as well as from the hearing in this underlying case. Consistent with the requirements of section 392.245.5, it will be necessary for the Commission to determine whether these services are effectively competitive on an exchange-by-exchange basis. Since the original finding of transitionally competitive applied to the entire service area, we assume sufficient evidence for such a finding is available.
 

 For the foregoing reasons, we hold that the Commission erred in finding that the services in question converted to competitive status in 1999. When SWB became subject to price-cap regulation in 1997, all its services became subject to price-cap regulation at that time, and the Commission erred in finding competitive status under the old statutes. We reverse the Commission’s findings to the contrary, and we remand for the Commission to analyze the evidence it already has available in order to determine whether “effective competition” for these services currently exists. If the Commission deems it necessary, the Commission may receive addi
 
 *316
 
 tional evidence to determine the issues in question.
 

 Conclusion
 

 For the foregoing reasons, the judgment of the Commission is affirmed as to Point I and reversed and remanded as to Point II.
 

 HOLLIGER and ULRICH, JJ., concur.
 

 [1]
 

 . An "alternative local exchange telecommunications company” is one that has been certified by the Commission to provide services in a specific geographic area
 
 subsequent to
 
 December 31, 1995. § 386.020(1). An "incumbent local exchange telecommunications company” is one that was authorized to provide basic local telecommunications service in a specific geographic area
 
 as of
 
 December 31, 1995. § 386.020(22).
 

 [2]
 

 . Public Service Commission Case No. TO-2001-467,
 
 In the Matter of the Investigation of the State of Competition in the Exchanges of Southwestern Bell Telephone Co.
 

 [3]
 

 .Communications Cable-Laying Company, d/b/a Dial US, became the first alternative company certified in Missouri in January 1997, and it began providing service in Springfield immediately thereafter. Competition in most other major exchanges began shortly after January 1997, and now extends to all SWB Missouri exchanges.
 

 [4]
 

 . The Office of Public Counsel, authorized by section 386.700, has a duty to represent and protect the interests of the public in any proceeding before or appeal from the Commission.
 
 See
 
 § 386.710. For convenience, the Office of Public Counsel is sometimes hereafter referred to as "Public Counsel.”
 

 [5]
 

 . IntraLATA service, commonly known as "local long distance” service, refers to telecommunications service between points within the same LATA (local access and transportation area). A "LATA" is defined as a federally approved contiguous geographic area that defines a permissible area of operations for the Bell Operating companies. § 386.020(29).
 

 [6]
 

 . Citing section 386.500.2, SWB and the Commission assert that Public Counsel is precluded from contesting the Commission’s decision as to the SS7 and LIDB services because they failed to raise this claim in their motions for rehearing with the Commission. Public Counsel does not respond to this assertion in their briefs, and we see nothing indicating that it was raised; we therefore deem the argument with regard to these specific services abandoned and decline to address it.
 

 [7]
 

 . The Chapter 392 purposes and policies, as set out in section 392.185, are:
 

 (1) Promote universally available and widely affordable telecommunications services;
 

 (2) Maintain and advance the efficiency and availability of telecommunications services;
 

 (3) Promote diversity in the supply of telecommunications services and products throughout the state of Missouri;
 

 (4) Ensure that customers pay only reasonable charges for telecommunications service;
 

 (5) Permit flexible regulation of competitive telecommunications companies and competitive telecommunications services;
 

 (6) Allow full and fair competition to function as a substitute for regulation when consistent with the protection of ratepayers and otherwise consistent with the public interest;
 

 (7) Promote parity of urban and rural telecommunications services;
 

 (8) Promote economic, educational, health care and cultural enhancements; and
 

 (9) Protect consumer privacy.
 

 [8]
 

 . SWB presented evidence that over 600 inter-exchange carriers were providing inter-exchange service in Missouri and over sixty CLEC’s were providing basic local services.
 

 [9]
 

 .
 
 In the Matter of the Application of Southwestern Bell Telephone Co. to Provide Notice of Intent to File an Application for Authorization to Provide in-region InterLATA Services Originating in Mo. Pursuant to Section 271 of the Telecommunications Act of 1996,
 
 9 Mo. P.S.C.3d 181 (2000).
 

 [10]
 

 . IntraLATA private line/dedicated services, intraLATA toll services, Wide Area Telecommunications Services (“WATS”) and 800 services, special access services, and certain operator services.
 

 [11]
 

 . Section 392.370.1 states in relevant part:
 

 After the effective date of an order ... which finds, pursuant to section 392.361, that a ... service is sufficiently competitive to justify a lesser degree of regulation, the
 
 same, substitutable, or equivalent service
 
 offered by a transitionally competitive or noncompetitive telecommunications company [such as SWB] shall be classified as transitionally competitive ... if the telecommunications service granted a lesser degree of regulation is authorized ... anywhere within the ... service area of the transitionally competitive or noncompetitive telecommunications company.
 

 [12]
 

 . Public Service Commission Case No. TO-93-116,
 
 In the Matter of Southwestern Bell Telephone Company’s Application for Classification of Certain Services as Transitionally Competitive,
 
 1 P.S.C.3d 479 (Dec. 21, 1992). The finding of "transitionally competitive” as to four of these services was affirmed by this court in
 
 State ex rel. Competitive Telecomm. v. Mo. Pub. Serv. Comm’n,
 
 886 S.W.2d 34 (Mo.App.1994). The findings as to the WATS and 800 services were not appealed.
 

 [13]
 

 . The court held:
 

 ... this Court concludes, as a matter of law, that the Missouri legislature intended to restrict the application of [these specific provisions of) Section 392.361 ... and Section 392.370.... The Court also concludes that even where the Commission had already determined, prior to the enactment of Section 392.245 ..., that certain services offered by a noncompetitive telecommunications company should be classified as "transitionally competitive,” the legislature intended that the enactment of Section 392.245 ... supplants that determination, and determinations made by the Commission under the provisions of [the older statutes] no longer apply to a telecommunications company that becomes subject to price cap regulation ... prior to the expiration of "transitionally competitive” status.
 

 [14]
 

 . We acknowledge that the Act does provide for some exceptions from the stringent regulation of section 392.245, but those exceptions are specifically delineated and clearly contemplate that they are exceptions to the rule.
 
 See, e.g.,
 
 §§ 392.245.4(5); 392.245.11; 392.246. The Act does not reference sections 392.361 or .370 as exceptions to the requirements of section 392.245.
 

 [15]
 

 . Section 386.020(30) defines a "large local exchange telecommunications company” as a local exchange company that has at least one hundred thousand access lines in Missouri.
 

 [16]
 

 . The statutes are referred to only to the extent that a portion of § 392.530, which, in part, explained why sections 392.361 to 392.520 were originally enacted in 1987, was left in as part of Senate Bill 507.
 

 [17]
 

 . Section 392.245.5 provides:
 

 If the commission determines that effective competition exists in the exchange, the local exchange telecommunications company may thereafter adjust its rates for such competitive services upward or downward as it determines appropriate in its competitive environment.
 

 [18]
 

 . Section 392.245.2 provides in relevant part:
 

 A small incumbent local exchange telecommunications company may elect to be regulated under this section upon providing written notice to the commission if an alternative local exchange telecommunications company has been certified to provide basic local telecommunications service and is providing such service in any part of the small incumbent company's service area, and the incumbent company shall remain subject to regulation under this section after such election.
 

 [19]
 

 . Those purposes and policies are listed,
 
 supra,
 
 at p. 7, n. 7.