**COUNTY OF JEFFERSON,**
**et al., Appellants,**

**v.**

**QUIKTRIP CORPORATION,**
**et al., Respondents.**

No. 78023.

Supreme Court of Missouri,
En Banc.

Dec. 19, 1995.

Mark Arnold, Arthur L. Smith, Harry B. Wilson, Thomas A. Cunningham, James E. Mello, Jay A. Summerville, Mark A. Boatman, St. Louis, Dennis H. Tesreau, Hillsboro, for Respondents.

HOLSTEIN, Chief Justice.

The trial court entered summary judgment holding that § 99.845 and certain ordinances of the City of Herculaneum required the Jefferson County treasurer to pay to the city 50% of certain tax revenue increases generated by specified redevelopment project areas in the City of Herculaneum. Jefferson County and county officials, referred to here collectively as the "county," appealed. The issues on appeal include the constitutionality of § 99.845.[1] This Court has jurisdiction. *Mo.Const. art. V, § 3.* The judgment is affirmed.

Jefferson County enacted three sales taxes prior to 1989. The first was a county-wide sales tax adopted by a vote of the people in 1976. §§ *67.500–.548.* The second was a county-wide sales tax for capital improvements adopted by a vote in 1986. §§ *67.700–.727.* The third was a sales tax enacted for law enforcement services, again pursuant to a popular vote in 1987. § *67.582.* With regard to the capital improvement sales tax, the statute provides:

> All revenue received by a county ... which has been designated for a certain capital improvement purpose shall be deposited in a special trust fund and shall be used solely for such designated purpose.

§ *67.700.3.* With regard to the law enforcement sales tax, the relevant provision states:

> All revenue received by a county from the tax authorized under the provisions of [§ 67.582] shall be deposited in a special trust fund and shall be used solely for providing law enforcement services within such county for so long as the tax shall remain in effect.

§ *67.582.3.*

Pursuant to the "Real Property Tax Increment Allocation Redevelopment Act," §§ 99.800–.865, the City of Herculaneum

---

Benson Cytron, Daniel A. Cytron, House Springs, for Appellants.

1. All statutory references are to RSMo1994 unless otherwise noted.

adopted a series of ordinances between 1989 and 1992. In general, these ordinances provided for the establishment of redevelopment districts and provided a mechanism, authorized by statute, to pay for certain public improvements within the redevelopment districts. In the case of real property, a payment in lieu of taxes (PILOT) attributable to the increased value of each parcel of real property in the redevelopment project area goes to the "special allocation fund." § *99.845.1(2)*. For redevelopment plans approved by ordinance between July 12, 1990, and August 31, 1991:

> [F]ifty percent of the total additional revenue from taxes imposed by the municipality, or other taxing districts, which are generated by economic activities within the area of the redevelopment project over the amount of such taxes generated by economic activities within the area of the redevelopment project in the calendar year prior to the adoption of the redevelopment project by ordinance, while tax increment financing remains in effect, but excluding taxes imposed on sales or charges for sleeping rooms paid by transient guests of hotels and motels, licenses, fees or special assessments other than payments in lieu of taxes, shall be allocated to, and paid by the collecting officer to the treasurer or other designated financial officer of the municipality, who shall deposit such funds in a separate segregated account within the special allocation fund.

§ *99.845.2*. Nearly identical provisions are made for funding of redevelopment plans approved after August 31, 1991. § *99.845.3*.

The city ordinances created the Interstate Highway 55 Tax Increment Finance (I–55 TIF) District and the Riverview TIF District. In the I–55 TIF District, Quiktrip expended more than $1.2 million to construct improvements at the I–55 interchange, including access roads and storm water and sanitary sewers in connection with an approved redevelopment plan. Under an approved redevelopment plan amended on December 17, 1991, Quiktrip was to be paid back out of the I–55 TIF District "special allocation fund." Bonds were issued to provide for certain other improvements in the Riverview TIF District which were to be paid for out of the "special allocation fund" by taxes and PILOTS from that district. That plan was approved on February 17, 1992. The bonds were held by Buchheit. Pursuant to the ordinances, PILOTS would be collected by the county collector and paid to the city's treasurer with respect to the real property in the TIF Districts.

During the tax years 1990 and 1991 and the first two months of 1992, the county failed to pay the city the PILOTS and 50% of the revenue increases from the sales taxes collected within the I–55 TIF District. The city also did not receive payments from the county of additional revenue from sales taxes imposed by the counties within the Riverview TIF District for the period beginning September 1992.

The county filed a declaratory judgment action on January 7, 1994, naming the city, Quiktrip and Buchheit as defendants. The plaintiffs contended that they, as county officials, were obligated to deposit all funds received from the general revenue sales tax fund into the general revenue of the county, to deposit all funds from the capital improvement sales tax into a fund to be used for capital improvements, and all funds from the law enforcement sales tax to a fund to be used only for law enforcement. The trial court granted summary judgment in favor of the defendants. In doing so, it declared constitutional subsections 99.845.2 and 99.845.3, declared valid and enforceable the city's ordinances at issue, and declared the county's obligation to pay the city 50% of the increases in economic activity taxes generated in the Riverview and I–55 TIF Districts.

### I.

In its first point on appeal, the county argues that the trial court erred in finding the county was obligated under § 99.845 to pay the city 50% of revenue increases generated in the TIF Districts from the capital improvement sales tax and law enforcement sales tax because those taxes were approved by the county voters and pursuant to §§ 67.582.3 and 67.700.3 were to be held in a trust fund specifically for the designated purposes. The county claims § 99.845 requiring

50% of the total additional revenue from taxes generated by economic activities within the area of the redevelopment project is inconsistent with the provisions of §§ 67.582.3 and 67.700.3 providing that those taxes are to be used for law enforcement and capital improvements.

On their face, the statutes appear to be inconsistent. Nevertheless, the Court's duty is to attempt to reconcile the statutes and apply them both. *State ex rel. McNary v. Stussie*, 518 S.W.2d 630, 635 (Mo. banc 1974). Repeals by implication are not favored. *See, e.g., Poling v. Moitra*, 717 S.W.2d 520, 522 (Mo. banc 1986), and *Kansas City Terminal Ry. Co. v. Industrial Comm'n*, 396 S.W.2d 678, 683 (Mo.1965). "When two statutes are repugnant in any of their provisions, the later act, even without a specific repealing clause, operates to the extent of the repugnancy to repeal the first." *Morrow v. City of Kansas City*, 788 S.W.2d 278, 281 (Mo. banc 1990). Sections 67.582 and 67.700 were enacted prior to § 99.845.[2] The only rational way to reconcile each of the statutes is to conclude that the legislature intended to create an exception to the county sales tax statutes. Generally, all but 1% of the sales taxes collected must be distributed to the county either for general revenue or for specified purposes. The exception created by § 99.845 is applicable where ordinances, such as the ones here at issue, create a TIF District and authorize public improvements which generate additional economic activity that results in greater tax collection. In that limited and special circumstance, a portion of the increased taxes are to be placed in the "special allocation fund" to pay for the public improvements.

The county argues that the legislature intended to exclude sales taxes for special designated purposes from the 50% allocation to the TIF Districts. However, § 99.845 excludes "taxes imposed on sales or charges for sleeping rooms paid by transient guests of hotels and motels, licenses, fees or special assessments other than payments in lieu of

taxes...." The legislature expressly excluded some taxes. It could also have excluded the sales taxes authorized for special designated purposes but did not do so. When the legislature expressly excludes some taxes, it is reasonable to conclude that those were the only taxes the legislature intended to exclude. *See Schudy v. Cooper*, 824 S.W.2d 899, 901 (Mo. banc 1992).

Neither is it correct to say that §§ 67.700 and 67.582 are more specific than § 99.845 and, as such, the specific should prevail over the more general statute. An argument can be constructed that § 99.845 is more specific than the sales tax provisions of §§ 67.700.3 and 67.582.3. In reality, neither the county sales tax law nor the special allotment fund law is more specific. Rather, as noted above, § 99.845 was enacted later than the statutes authorizing a county capital improvements or law enforcement tax. The legislature was undoubtedly aware that the authority for the collection of those taxes existed. Had the legislature wished to create an exclusion or exception for those two forms of tax, it could have done so. The legislature is presumed to have had knowledge of the county sales tax statutes when it enacted § 99.845. *See Nicolai v. City of St. Louis*, 762 S.W.2d 423, 426 (Mo. banc 1988). The most recent enactment results in the TIF Districts receiving 50% of additional revenues from all county sales taxes except those specified.

The strongest authority cited by the county is language from *Drey v. McNary*, 529 S.W.2d 403, 411 (Mo. banc 1975). In *Drey*, this Court stated:

The provisions of our constitution and statutes requiring voter approval before certain substantial increases in taxes can be effected, serve a salutary purpose and reflect the intention of the people to retain to themselves a control over taxing power. It is imperative that when voters are asked to levy taxes against themselves they understand that the taxing body and the

---

**2.** Section 67.700.3 has been in its current form since being enacted in 1983. *L.1983 H.B. 269 and 514*. Section 67.582.3 has been in the same form since its enactment in 1987. *L.1987 H.B. 210*. By contrast, § 99.845.2 was first enacted in 1990. *L.1990 H.B. 1564*. The present form of § 99.845 was enacted in 1991. *L.1991 H.B. 502*.

courts will limit use of funds to the purpose voted.

The county asserts that, when a tax is approved by the voters for a specified purpose, the courts should limit the use of tax revenue to that purpose. However, the language quoted from *Drey* was dicta. In addition, *Drey* did not involve the reconciliation or construction of inconsistent statutes. Neither did *Drey* purport to create a new rule of statutory construction. In sum, that case is inapposite.

## II.

The county argues that §§ 99.845.2 and .3 violate the Hancock Amendment. *Mo.Const. art. X, §§ 16, 21 & 22.*

### A.

■■■ Article X, § 22, prohibits counties from levying a new tax or increasing the levy of an existing tax without the approval of the voters of the county. However, § 99.845 does not levy new taxes or increase the levy of existing taxes. That section merely authorizes the redistribution of existing tax revenues from one local government to another. "Changing the distribution of revenue is not the 'levying' of a new tax requiring voter approval." *Berry v. State,* 908 S.W.2d 682, 685 (Mo. banc 1995) Article X, § 22, does not prohibit the legislature from authorizing a redistribution of local revenues among the local governments in which a tax is collected and expended.

### B.

■■■ The county contends that payments by the county to the city to finance public improvements within the TIF districts are "a new activity or service or an increase in the level of any activity or service" prohibited by article X, sections 16 and 21. Article X, § 16, prohibits the state from requiring new or expanded activities by counties without full state financing and from transferring the tax burden for an activity from the state to a local government. Article X, § 21, prohibits the state from requiring any new activity or service by local government without state funding. Nothing in subsections 2 and 3 of § 99.845 mandates a new activity by a local government. While the state authorizes public improvements and reallocation of local revenues by statute, the mandate to do so is accomplished entirely by the city in which the tax is collected. In addition, there is no shifting of the tax burden from the state to the county. *See Berry v. State, supra.* Subsections 99.845.2 and .3 do not violate article X, §§ 16 and 21 of the Missouri Constitution.

The only new activity that might arguably be required of the county is the act of distributing the tax revenues to the municipality. The argument is without merit. Distributing tax revenue is part of the normal operations of any county. There is no violation of § 21 based on the *de minimus* administrative activity of calculating the amount due and writing the checks to the city. *See Miller v. Dir. of Revenue,* 719 S.W.2d 787, 789 (Mo. banc 1986).

## III.

■■■ The county entered into a settlement agreement on July 29, 1992, providing that beginning with the tax year 1992 and during each year that the TIF District remains in effect, the county is to pay the city the PILOTS generated in the I-55 TIF District and the 50% sales tax increment and that the county waives all claims contesting the validity of the TIF act, the I-55 TIF District, the city ordinances at issue, any payment made to the city or Quiktrip pursuant to the TIF act, or any payment made or required to be made under the settlement agreement. The trial court ordered the county to perform each of its obligations under the agreement.

The county contends that it had no authority to make any expenditures from revenues of the capital improvements and law enforcement sales taxes other than for the purposes designated in the sales tax statutes. The county argues that acts of a county commission done without authority are void acts. The distributions agreed to in the settlement are all authorized by § 99.845 and mandated by the city's ordinances. The statute and ordinances are not shown to be invalid. Therefore, the agreement was not void.

## IV.

The county's petition also contains a claim for a judgment for monies allegedly improperly paid to the city from the county sales taxes for 1992 and 1993. Because the TIF District taxes were lawfully due the city from the county, the county is entitled to no refund for having paid those funds to the city. That claim is denied.

The judgment is affirmed.

BENTON, PRICE, LIMBAUGH, ROBERTSON and COVINGTON, JJ., and DOWD, Special Judge, concur.

WHITE, J., not sitting.