**STATE of Missouri ex rel. VILLAGE OF BEL–RIDGE, et al., Relators/Respondents,**

v.

**Janette M. LOHMAN, Director, Department of Revenue, State of Missouri, Respondent/Appellant,**

**and St. Louis County, Intervenor/Appellant.**

**No. 72647.**

Missouri Court of Appeals, Eastern District, Division Five.

April 7, 1998.

self-protection.

James H. White, Clayton, Evan Buckheim, Jefferson City, for appellant.

James E. Mello, St. Louis, for respondents.

CRAHAN, Chief Judge.

Appellants Janette M. Lohman, Director of the Missouri Department of Revenue ("Director"), and St. Louis County appeal the judgment of mandamus entered against Director requiring her to allocate and distribute certain tax proceeds to Relators Village of Bel–Ridge, City of Chesterfield, City of Eureka, City of Sunset Hills and City of Independence.[1] We affirm the judgment as modified to delete the trial court's erroneous assessment of costs against Director.

The case below was submitted on stipulated facts. The Real Property Tax Increment Allocation Redevelopment Act, Sec. 99.805–99.855 RSMo 1994 [2] ("TIF Act") authorized municipalities to adopt redevelopment plans for blighted areas through tax increment financing ("TIF"). Pursuant to the TIF Act, Relators enacted a series of ordinances designed to accomplish the redevelopment of certain blighted areas and to create within these areas new and substantial sources of sales tax revenue.

Pursuant to the TIF Act, the taxing authority retains half of the new local sales tax revenue generated in the designated TIF redevelopment area and the other half must be allocated to a special allocation fund for the payment of redevelopment costs. Sec. 99.845.3.

St. Louis County has authorized and imposed several sales taxes that generate revenue within the redevelopment areas established by Relators Bel–Ridge, Chesterfield, Eureka and Sunset Hills. These include a general sales tax (Sec. 66.600, *et seq.*) and two transportation sales taxes (Sec. 94.600, *et seq.* and 94.660, *et seq.* RSMo 1995 Supp.). Jackson County [3] has authorized and levied sales taxes applicable within the redevelopment areas established by the City of Independence, including a general sales tax (Sec. 67.500, *et seq.*) and an anti-drug sales tax (Sec. 67.391, *et seq.*).

Relators have also passed local sales taxes. Bel–Ridge, Eureka and Sunset Hills each impose a capital improvement tax pursuant to Sec. 94.890 RSMo 1995 Supp. Independence imposes a general sales tax pursuant

---

1. This appeal was originally filed in the Missouri Supreme Court based on Director's contention that it involved "the construction of the revenue laws of this state." Mo. Const. Art. V, Sec. 3. The Missouri Supreme Court transferred the case to this court citing *Alumax Foils, Inc. v. City of St. Louis,* 939 S.W.2d 907 (Mo. banc 1997). In *Alumax,* the Missouri Supreme Court held, *inter alia,* that a revenue law "of the state" is "a law adopted by the general assembly to impose, amend or abolish a tax or fee." *Id.* at 910. None of the state laws at issue impose, amend or abolish any taxes. They merely authorize local

governments to establish certain taxes. *See* Sec. 94.660, 94.850 and 94.890 RSMo 1995 Supp. Accordingly, this appeal does not fall within the exclusive jurisdiction of the Missouri Supreme Court and jurisdiction is properly lodged in this court.

2. All further statutory references are to RSMo 1994 unless otherwise indicated.

3. Jackson County is not a party to this action.

to Sec. 94.500, *et seq.* Sunset Hills also imposes a general sales tax pursuant to Sec. 94.850, *et seq.*

Director is statutorily obligated to collect and administer the revenues generated by all of the sales taxes. Sec. 32.087.6. The parties stipulated that Director has complied with her statutory obligation to collect this sales tax revenue. The dispute in this case is based upon Director's failure to allocate and pay to Relators fifty percent of the increased sales tax revenue generated in Relators' TIF districts for deposit in Relators' respective allocation funds, which Relators claim is required by Sec. 99.845.3.

In its Amended Judgment and Permanent Writ of Mandamus, the trial court declared that Director "has a clear, unequivocal, specific duty to pay to Relators' financial officers fifty percent of the total additional revenue from local sales taxes generated by Relators' redevelopment under taxes imposed pursuant to Sec. 66.600, *et seq.*, 67.391, *et seq.*, 67.500, *et seq.*, 94.500, *et seq.*, 94.600, *et seq.*, 94.660, *et seq.*, 94.850, *et seq.* and 94.890 RSMo1995 Supp. the amount of such taxes generated within the area of each respective redevelopment area in the calendar year prior to its establishment." The trial court, however, granted only prospective relief, compelling Director to pay to Relators' financial officers fifty percent of the total additional sales tax revenue generated in the TIF districts "from the date of this Order." [4] The trial court further stayed its writ pending the outcome of this appeal.

On appeal, St. Louis County urges that the trial court erred in ordering Director to include three of the subject sales taxes in the TIF allocation on the ground that they are special purpose levies enacted subsequent to enactment of the TIF Act and intended to be exempt from such allocation. St. Louis County and Director further claim the trial court erred in entering its writ of mandamus against Director because she is not the "collecting officer" designated to perform the duties imposed by the writ as contemplated by Sec. 99.845.3. Finally, Director urges the trial court erred in taxing court costs against her.

■ In its first point, St. Louis County challenges the trial court's inclusion of three taxes among those required to be included in the TIF allocation: the quarter cent Metrolink sales tax enacted in 1994 and codified in Sec. 94.660 RSMo 1995 Supp.; the municipal "local option" sales tax enacted in 1993 and codified in Sec. 94.850; and the municipal capital improvements sales tax enacted in 1994 and codified in Sec. 94.890 RSMo 1995 Supp. The statutes authorizing each of these taxes contain provisions requiring that the revenues derived from the tax be deposited in a special trust fund and, in the case of the Metrolink and municipal capital improvement taxes, that the revenues produced by such taxes be used solely for specified purposes. *See* Sec. 94.660.5-6 RSMo 1995 Supp.; Sec. 94.857; Sec. 94.890.6 RSMo 1995 Supp.

■ In *County of Jefferson v. Quiktrip Corp.*, 912 S.W.2d 487 (Mo. banc 1995), the Missouri Supreme Court considered a similar contention with respect to whether taxes required by their enabling legislation to be deposited in a special trust fund and used only for certain specified purposes were nonetheless required to be included in computing the allocation required by the TIF Act. The Supreme Court observed that the requirement in Sec. 99.845 that 50% of the additional revenue from taxes generated within a redevelopment area be allocated to the TIF District "special allocation fund" is at least facially inconsistent with the requirements of the sales tax enabling statutes that the revenues be devoted solely to statutorily specified purposes. 912 S.W.2d at 490. In reconciling the apparent conflict, the Court took note of the general rule of statutory construction that, when two statutes are repugnant in any of their provisions, the later act, even without a specific repealing clause, operates to the extent of the repugnancy to repeal the first. *Id.*, citing *Morrow v. City of Kansas City*, 788 S.W.2d 278, 281 (Mo. banc 1990). In addition, the Court pointed out that in enacting Sec. 99.845 (the TIF Act), the legislature expressly excluded some taxes from the required TIF allocation—*i.e.*, "taxes imposed on sales or charges for sleeping

---

4. Relators have not contested the prospective    nature of the writ on appeal.

rooms paid by transient guests of hotels and motels, licenses, fees or special assessments other than payments in lieu of taxes." 912 S.W.2d at 490. Reasoning that the legislature could also have excluded sales taxes authorized for special designated purposes but did not do so, the Court found that it was reasonable to conclude that the taxes specifically excluded were the only taxes the legislature intended to exclude. *Id.* The Court held that the legislature intended to create an exception to the sales tax statutes where ordinances create a TIF District and authorize public improvements which generate additional economic activity that results in greater tax collection. *Id.*

St. Louis County points out that the three taxes at issue on appeal were all enacted after the latest enactment of the TIF Act. Therefore, St. Louis County urges, the reasoning of the Missouri Supreme Court in *Quiktrip* compels the conclusion that these taxes are exempt from the TIF allocation because the later acts must be deemed to have repealed the former to the extent of any repugnancy. We disagree.

The "repeal by later repugnant enactment" principle discussed and applied by the Missouri Supreme Court is not, as St. Louis County apparently would have it, a rule of substantive law. It is simply a generally recognized rule of statutory construction frequently employed by courts in ascertaining the intent of the legislature. Although the Court acknowledged and relied upon this principle as part of its analysis in determining the legislature's intent in enacting the TIF Act, it does not follow that the subsequent enactments of specially designated sales taxes renders them exempt from allocations under the TIF formula. Having ascertained that the legislature intended by its enactment of the TIF Act to create an exception to the requirement that certain sales taxes be devoted only to specified purposes, that intent presumably applies to any increased tax revenues from the increased economic activity in the TIF District unless such

revenues are specifically exempted from allocation either in the TIF Act itself or in the sales tax enabling legislation.

Moreover, St. Louis County's argument completely ignores the other basis for the *Quiktrip* decision, that the legislature had seen fit to exclude certain specified taxes from the TIF allocation required by Sec. 99.845 and thus presumably did not intend to exclude any others. In this regard, the 1997 amendments to the TIF Act are instructive. *See* 1997 Mo. Legis. Serv. No. 7, 1517, *et seq.* In these amendments, signed into law on September 26, 1997 and effective on December 23, 1997, the legislature expanded the list of taxes excluded from the TIF allocation required by Sec. 99.845 to specifically exclude "personal property taxes, taxes imposed on sales or charges for sleeping rooms paid by transient guests of hotels and motels, taxes levied pursuant to section 70.500, RSMo, or effective January 1, 1998, taxes levied for the purpose of public transportation pursuant to section 94.660, RSMo,...." Inasmuch as taxes levied pursuant to Sec. 94.660, one of the taxes at issue in this appeal, are expressly exempted "effective January 1, 1998," it is reasonable to conclude that the legislature did not intend to exclude them prior to that date. This is also consistent with the Missouri Supreme Court's conclusion in *Quiktrip* that the taxes specifically excluded in Sec. 99.845 are the only taxes the legislature intended to exclude. We find no error in the trial court's conclusion that the local sales taxes at issue in this appeal are to be included in the TIF allocation required by Sec. 99.845. Point denied.

■ St. Louis County in its second point and Director in her first point claim that, even if the subject taxes are required to be included in the TIF allocation, the trial court nonetheless erred in entering its judgment of mandamus against her because she is not the "collecting officer" responsible for calculating and paying the TIF increment pursuant to Sec. 99.845.3.[5]

---

**5.** Section 99.845.3 provides:

In addition to the payments in lieu of taxes described in subdivision (2) of subsection 1 of this section, for redevelopment plans and projects adopted or redevelopment projects ap-

proved by ordinance after August 31, 1991, fifty percent of the total additional revenue from taxes which are imposed by the municipality or other taxing districts, and which are generated by economic activities within the

The term "collecting officer" is not defined in the TIF Act. In construing a statute, the court's task is to ascertain the intent of the General Assembly by giving the words chosen their plain and ordinary meaning. *May Dept. Stores Co. v. Director of Revenue*, 791 S.W.2d 388, 389 (Mo. banc 1990). Director concedes that she is charged with the duty to "perform all functions incident to the administration, collection, enforcement, and operation of the tax, and the director of revenue shall collect in addition to the sales tax for the state of Missouri all additional sales taxes authorized under the authority of the local sales tax law." Sec. 32.087.6. Moreover, the parties agree that "during all times relevant to this action, ... the Director of Revenue has collected the revenue from each of the above-mentioned sales taxes." The plain and ordinary meaning of "the collecting officer" of sales taxes is the Director of Revenue because it is she who is charged with the duty to collect such taxes and she who, in fact, has collected them.

Director urges, however, that there are more than 900 Missouri specific statutory references to the "Director of Revenue." Director reasons that it is therefore reasonable to infer that if the legislature had intended to impose the obligations to calculate and pay the TIF increment on her, it would have done so explicitly and not by use of the more general term "collecting officer." We disagree. Director's argument presumes that only taxes collected by Director are subject to the TIF allocation. This is not the case. The TIF statute also encompasses taxes such as earnings taxes and taxes on gross receipts of utilities which are not collected by Director. It is therefore reasonable to assume that the legislature used the more general term "collecting officer" instead of "Director of Revenue" because the use of the specific term would force Director to allocate and pay out revenues she never collected.

Director also argues that proposed amendments to the TIF Act introduced but not adopted during the 89th General Assembly support her contention.[6] We disagree. In the proposed amendments, which would have expanded TIF allocations under certain circumstances to include increases in state sales tax revenues, the duty to collect and pay the TIF allocations would have been expressly imposed on its "Director of Revenue." According to Director, this supports her contention that when the legislature means to refer to the Director of Revenue, it does so explicitly. We disagree. Assuming *arguendo* that amendments never passed by the legislature may have some probative value, it would have been entirely consistent for the legislature to have employed the term "Director of Revenue" in the proposed amendments because they dealt exclusively with state sales taxes, which are within the exclusive province of Director. As noted above, this is not true of Sec. 94.845.3, which is not confined to allocation of taxes collected by Director.

■ Finally, at oral argument, Director called our attention to the 1997 Amendments to the TIF Act.1997 Mo. Legis. Serv. No. 7, 1517, *et seq.* In these amendments, which became effective on December 23, 1997, the legislature modified Sec. 99.845.3 to require that the TIF increment be paid by the "local political subdivision collecting officer." Although this amendment had not been adopted at the time the case was submitted to the trial court, Director nevertheless urged that we consider its as evidence that this was the legislature's intent all along. We find Director's contention unpersuasive. When the legislature enacts a new law, it is normally understood to intend to change the law. *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992). We find nothing in the amendments to Sec. 99.845.3

area of the redevelopment project over the amount of such taxes generated by economic activities within the area of the redevelopment project in the calendar year prior to the adoption of the redevelopment project by ordinance, while tax increment financing remains in effect, but excluding taxes imposed on sales or charges for sleeping rooms paid by transient guests of hotels and motels, licenses, fees or

special assessments and personal property taxes, other than payments in lieu of taxes, shall be allocated to, and paid by the collecting officer to the treasurer or other designated financial officer of the municipality, who shall deposit in a separate segregated account within the special allocation fund.

6. S.B. 165, 89th Gen. Assembly.

which supports Director's construction of the law as it existed prior to the amendment, which is the only issue before us. Points denied.

In her second point, Director claims the trial court erred in assessing costs against her. Relators concede the trial court erred because costs may not be taxed against the State or its officers. *Richardson v. State Highway & Transp. Comm'n,* 863 S.W.2d 876, 882 (Mo. banc 1993). Relators suggest we tax the costs against St. Louis County instead. Relators, however, are not entitled to such affirmative relief because they did not appeal the trial court's failure to assess costs against St. Louis County. Therefore, pursuant to Rule 84.14, we modify the judgment to delete the assessment of costs against Director.

As so modified, the judgment is affirmed.

RHODES RUSSELL, J., and CHARLES B. BLACKMAR, Senior Judge, concur.

