STATE of Missouri, ex rel., CITY OF MONETT, Missouri, Respondent,

v.

LAWRENCE COUNTY, Missouri, Kelli McVey, Sharon Kleine, Defendants,

Barry County, Missouri, Gary Youngblood, Janice Varner, and Lois Lowe, Appellants,

Barry County Emergency Services E–911 Board, Appellant.

Nos. SD 31500, SD 31502.

Missouri Court of Appeals, Southern District, Division Two.

May 13, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 4, 2013.

Application for Transfer Denied Oct. 1, 2013.

636

Cordelia F. Herrin, David A. Cole, Ellis, Cupps and Cole, Cassville, for Appellant.

Mary Jo Shaney, Kevin Mason, White Goss Bowers March Schulte & Weisenfels, PC, Kansas City, for Respondent.

DANIEL E. SCOTT, P.J., Judge.

This appeal involves tax increment financing (TIF).[1] There are two principal questions:

1. Can a county watch TIF projects be undertaken and completed, and collect, distribute, and retain TIF monies related thereto, all for years without protest, then claim the TIF actions were void *ab initio?*

2. Is an E–911 tax subject to TIF allocation if voters approved the tax after the TIF district was created?

The trial court said "no" and "yes" respectively on summary judgment. We up-

---

1. *See* RSMo § 99.800 *et seq.*, the Real Property Tax Increment Allocation Redevelopment Act ("TIF Act"). Given our grounds for decision, we need not detail the complexities of the case below (documents exceeding 2800 pages) or of TIF law in general. Missouri TIF basics were recently summarized in *Great Rivers Habitat Alliance v. City of St. Peters,* 384 S.W.3d 279, 281–82 (Mo.App.2012). Secondary sources include Cory C. VanDyke, *Fields of Dreams: The Expectation and Common Reality of Tax Increment Financing,* 79 UMKC L.Rev. 791, 794 (2011), and Josh Reinert, *Tax Increment Financing in Missouri: Is It Time for Blight and but-for to Go ?,* 45 St. Louis U. L.J. 1019 (2001).

hold those rulings, reject other complaints on appeal, and affirm the judgment entered in favor of the City of Monett ("City") and against Barry County and certain elected officials (collectively "County") and the Barry County E–911 Board ("Board").[2]

## Background

█ The TIF Act authorizes municipalities to adopt and finance redevelopment plans for blighted areas with the purpose to create in such areas new and substantial sources of sales tax revenue. *See State ex rel. Village of Bel–Ridge v. Lohman,* 966 S.W.2d 356, 357 (Mo.App.1998).

### The 1996 and 2005 TIFs

City created one TIF district in 1996 and another in 2005. In each instance, City created a TIF commission and County appointed a representative who actively participated. County received the proposed redevelopment plan and notice of the public hearing. After the public hearing, the TIF commission recommended that City approve the plan, which City did by ordinance.

The 1996 TIF district included, as core projects, highway improvements and a Wal–Mart Supercenter. The 2005 TIF district included a Lowe's home improvement center. City pledged TIF allocation funds and issued over $9 million in bonds, etc., to finance these redevelopments.

After redevelopment, these areas generated new County sales tax revenues totaling millions of dollars. County kept 50% of these monies and sent 50% to City for reimbursement of TIF redevelopment

costs, starting in 1997. *See* § 99.845.3; *Lohman,* 966 S.W.2d at 357.

### The E–911 Tax

After creation of both TIF districts, County voters adopted a § 190.335 emergency services sales tax ("E–911 tax"). Through November 2010, the TIF districts generated nearly $1 million in E–911 tax revenue, none of which was allocated or paid to City.

### The Litigation

County stopped allocating TIF monies in July 2009. City sued in mandamus to enforce TIF allocation. County and Board filed an amended answer and counterclaim which denied that the TIF districts were validly created or that the E–911 tax was subject to TIF capture in any event.

City prevailed on the parties' cross-motions for summary judgment. In a 46–page judgment, the trial court found, *inter alia,* that County's counterclaims and defenses were barred by laches and estoppel, the TIF districts were validly enacted, and the E–911 tax was subject to TIF allocation.

County and Board appeal, raising a total of five points.

## County's Appeal–Points I, II, III & V

█ Points I and II reassert County's claims that the 1996 and 2005 TIFs were not validly created and, thus, void *ab initio.* In Point III, County urges that projects "approved in 1998 and 2007 did not meet the requirements of the TIF Act in effect at those times." Point V challenges trial court findings that laches or estoppel barred the foregoing complaints.[3] Finding

---

**2.** Judgment also was entered against Lawrence County (in which part of City lies) and some of its elected officials. They voluntarily dismissed their appeal, so we omit facts and references as to them.

**3.** Point V also takes issue with other findings which, in light of our disposition, we need not address.

no merit to Point V as stated, we need not reach Points I–III.[4]

We begin by quoting at length from the judgment's disposition of County's claims and defenses based on laches and estoppel:

In the instant case, the 1996 TIF District was adopted over thirteen years prior to Respondents' bringing their counterclaims. The 2005 District was adopted four years prior to Respondents' counterclaims. Prior to November 2009, Respondents had not initiated any challenges to the validity of the TIF Districts. In each instance, the Counties' representatives were members of the TIF Commission approving the TIF District's redevelopment plans and projects. Respondents actively participated in the creation of the TIF Districts, watched while improvements under the TIF Districts were made, collected increased sales tax revenues derived from the TIF Districts and refrained from making any claim until the City sought to enforce its rights under the TIF Districts in this lawsuit.

Since the approval of the TIF Districts, projects identified in the TIF Districts have been constructed. Wal–Mart, Lowe's and road improvements have all been made as contemplated by the TIF Districts [sic] plans. Bonds have been issued and the City has entered into redevelopment agreements with Wal–Mart and Lowe's that require the City to reimburse these developers with costs associated with construction of the TIF District projects. The City continued to implement its TIF District plans in light of the Counties' participation and silent acquiescence.

The issuance of bonds is significant. R.S.Mo. 99.835.4 provides that recitals in bond issuances that they are issued pursuant to the TIF Act are given conclusive evidence of their validity. Not only did bond holders rely on the validity of the TIF Districts, numerous third parties relied as well. Wal–Mart, Lowe's, the Missouri Highway and Transportation Commission and the City all spent funds to construct the TIF District improvements, improvements known to the Counties and approved by the Counties, while the Counties sat on their claims. The TIF Act presumes validity when bonds are issued. This Court should defer to the legislature's intent.

Until 2009, Respondents performed under the TIF Act as if the TIF Districts were valid. Respondents allocated sales taxes and PILOTs to the City. Pursuant to the TIF Act, each dollar of increased tax from within the TIF Districts was split 50/50 between the Counties and the City's special allocation funds. Respondents accepted the increased taxes generated within the TIF Districts. Respondents acted as if the TIF Districts were valid. Respondents benefitted from the validity of the TIF Districts. *See State ex rel. York v. Daugherty,* 969 S.W.2d 223, 226 (Mo. banc 1998) (parties to a void judgment are estopped from attacking it when they perform acts required by a void decree or accept its benefits.)

---

4. Point III further fails because, as the judgment states (footnotes omitted):

What the Respondents [*i.e.,* County and Board] claim are material facts related to amendments to the 1996 TIF District, among other "facts," were not raised in the pleadings or disclosed in discovery and Respondents have not timely sought leave to amend their pleadings. These "material facts" were raised for the first time in Respondents' Motions for Summary Judgment, and in any case do not go to the questions as plead [sic] in the Amended *Counterclaims* or in Respondents' Affirmative Defenses as to whether the 1996 and 2005 TIF Districts are void *ab initio.*

Respondents' delay in bringing its claim has worked an injustice on the City. Respondents and their witnesses have limited or no knowledge regarding the claims they bring. Without attacking whether the City's findings were in fact accurate when made, Respondents' claims demand that the City recreate events that occurred years prior. Respondents insist that the City justify its actions and substantiate judgments made long after memories have faded. This insistence allows the Respondents to pick apart the City's actions, with 20/20 hindsight, and second guess the evidence that City witnessed and considered based on a "record" that is not required under the TIF Act. This recreation of events is precisely what the doctrine of laches seeks to prohibit.

The Counties' belated attacks on the City's TIF Districts and legislation would disrupt settled expectations after years of work and reliance by various parties while, at the same time, allow the Counties to conduct themselves with impunity, as if they had no role or participation, and as if they have received no benefit. This is precisely the circumstance prohibited under Missouri law, and in which the doctrine of laches or estoppel should be applied. The entry of Summary Judgment is proper under the doctrines of laches or estoppel.

County does not deny the foregoing facts in Point V, nor argue that they would not support laches or estoppel against a private party in other circumstances. Rather, Point V offers three special objections to applying laches or estoppel here, with two pages of supporting argument, in total, as to all three of these sub-claims.

*1. The factual record "is not extensive enough to determine the equities between the parties."*

The lone cited authority is *North v. Hawkinson*, 324 S.W.2d 733, 742 (Mo. 1959), which County partially quotes as stating that the "question of laches is one of fact which can better be determined upon the trial of the merits from all the facts and circumstances." County omits the beginning of that sentence ("Also, the claim of laches is not pressed on this appeal . . ."), which shows why *North* is distinguishable. We may agree with the partial quote in general, but nothing in *North* or County's scant argument indicates why a trial was needed *here*.

Point V does not allege any specific deficiency in the record, dispute the facts cited by the trial court, or (aside from its next two sub-claims) suggest why those facts do not support application of laches or estoppel. As seen hereafter, the facts cited here compare favorably with prior cases where such relief was upheld. In addition, see *Rodgers v. Seidlitz Paint & Varnish Co.*, 404 S.W.2d 191, 198 (Mo.1966) (estoppel more a question of law than of fact, especially when essential facts are undisputed; concluding "that from the established facts only one reasonable inference can be drawn, namely, estoppel."); *Comens v. SSM St. Charles Clinic Med. Group, Inc.*, 258 S.W.3d 491, 497 (Mo.App. 2008) (similar, citing *Rodgers*). We reject this sub-claim.

*2. Laches and estoppel do not apply to government entities.*

■ County correctly notes that estoppel and laches rarely lie against government bodies. As County also notes, this reluctance rests on the principle that public rights generally should not yield to those of private parties. See *Fraternal Order of Police Lodge No. 2 v. City of St. Joseph*, 8 S.W.3d 257, 263 (Mo.App.1999).

■ There is little or no such concern in this dispute *between* public bodies. Estop-

pel has been "held to apply, particularly where, as is true here, the controversy is between one class of the public as against another class." *State ex rel. Consol. Sch. Dist. No. 2 v. Haid,* 328 Mo. 739, 41 S.W.2d 806, 808 (1931). *See also Consol. Sch. Dist. No. 2 v. Cooper,* 28 S.W.2d 384, 386 (Mo.App.1930) (citing cases); *Town of Montevallo v. Village School District of Montevallo,* 268 Mo. 217, 186 S.W. 1078, 1079 (1916); 31 C.J.S. *Estoppel and Waiver* § 262 & n. 8 (citing *Haid* ).

Laches has been applied against counties for more than a century. *See Simpson v. Stoddard County,* 173 Mo. 421, 73 S.W. 700, 710 (1903); *Dunklin County v. Chouteau,* 120 Mo. 577, 25 S.W. 553, 557 (1894). For example, when a county offered "[n]o excuse whatever" for its long delay and inaction, our supreme court declared that "[t]he neglect of the county in asserting its rights in a proper way for so great a length of time, to the continued prejudice of the rights of the defendant, cannot be excused." *Dunklin County,* 25 S.W. at 557.

Likewise for estoppel, as shown in *Montevallo,* where:

> the school district erected a building costing several thousand dollars, and from that time until the institution of this action no one questioned the title or right of the school district to use and enjoy the property. Valuable improvements were made thereon by the school district, and *as between the town and the school district* any judgment other than that rendered by the court nisi would

result in the perpetration of a wrong and rank injustice.

186 S.W. at 1080 (our emphasis).

A case between public bodies does not present the concerns noted by County. This sub-point fails.

*3. Laches and estoppel do not apply when legal remedies are sought.*

■ This is plainly wrong as to estoppel, which "operates as a defense to legal and equitable claims." *State ex rel. Leonardi v. Sherry,* 137 S.W.3d 462, 471 n. 8 (Mo. banc 2004) (citing Dan B. Dobbs, Law of Remedies § 13.2(5) (2d ed.1993)).

As to laches, Professor Dobbs states at § 2.4(4) of the same treatise:

> *Law and equity.* Courts have routinely referred to laches as an equitable defense, that is, a defense to equitable remedies but not a defense available to bar a claim of legal relief.[5] However, delay in pursuing a right might well qualify as an estoppel or even a waiver or abandonment of a right, as courts sometimes recognize. If the plaintiff "unreasonably" delays under circumstances suggesting that he intends not to pursue a claim and the defendant relies on this appearance to his detriment, all the elements of ordinary estoppel are present, and perhaps even the elements of waiver or abandonment. Because estoppel and waiver are substantive defenses that reach all remedies, both legal and equitable, they are applicable "at law."

Missouri law is in accord. *See UAW–CIO Local No. 31 Credit Union v. Royal Insurance Co.,* 594 S.W.2d 276, 281 (Mo. banc 1980).[6]

---

**5.** Arguably, the "rule" cited by County and Professor Dobbs does not fit this case at all. Laches was found to bar, not City's claim of legal relief, but County's *defensive* claims.

**6.** *See also Schwind v. O'Halloran,* 346 Mo. 486, 142 S.W.2d 55, 60 (1940) (laches bor-

rows from equitable estoppel and is akin to it); *Powell v. Bowen,* 279 Mo. 280, 214 S.W. 142, 145 (1919) ("Laches is but a manifestation of estoppel *in pais.* The latter is the genus, the former merely a species."). Our

Our highest court once memorably noted that laches "borrows from" estoppel, the elements of which "serve as a handmaiden to laches," such that both doctrines "meet in a faded line, or overlap at the edges...." *Troll v. City of St. Louis*, 257 Mo. 626, 168 S.W. 167, 175 (1914). Laches, in particular, was said to address unreasonable or unexcused delay and the inequity of enforcing a claim due to changed conditions or relations; it "forbids the spying out from the records of ancient and abandoned rights ... and often bars the holder of a mere technical right, which he has abandoned for years, from enforcing it when its enforcement will work large injury to many." *Id.* at 175–76 (quoting *Shelton v. Horrell*, 232 Mo. 358, 134 S.W. 988, 992 (1911)). These further observations, with some editing, might fit the case before us:

> The facts in this case in no small tones call out for the application of the doctrine of laches against plaintiffs claim ... a case in which the omission to move for many years has caused vast changes to be made in the betterment of the property and in the rise of values, a case in which it would cause a just man instinctively to cry out against holding that defendants, who in good faith invested great sums to improve the property, should now lose part of it on this newly sprung, newly asserted stale claim.

*Troll*, 168 S.W. at 176. Or, to echo a more contemporary sentiment, it is well to enforce the law, "but it is quite another matter to disrupt settled expectations years after" an alleged violation. *See Green v. Lebanon R–III Sch. Dist.*, 13 S.W.3d 278, 287 (Mo. banc 2000) (Wolff, J., concurring).

We deny this third and final Point V challenge to the trial court's application of laches and estoppel. Accordingly, we need not review the court's further findings that the TIF districts were validly enacted or County's Point I–III claims to the contrary.

## Board's Appeal—Point IV

■ The trial court ruled that the E–911 tax, adopted after these TIF districts were created, was subject to TIF allocation. Some case law background is in order.

The statutes as to TIF allocation facially conflict with statutes governing special-purpose sales taxes. *County of Jefferson v. Quiktrip Corp.*, 912 S.W.2d 487, 490 (Mo. banc 1995). Our supreme court reconciled this, in *Quiktrip*, by finding that the legislature intended to create a TIF exception to such sales tax laws. *Id.* TIF districts get "50% of additional revenues *from all county sales taxes* except those specified [in § 99.845]." *Id.* (our emphasis). *Lohman*, 966 S.W.2d at 358–59, cited and followed *Quiktrip* in this respect.

Board argues that *Quiktrip* and *Lohman* did not involve taxes adopted *after* a

---

supreme court has connected laches with estoppel in these terms:

> *Laches* in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an *estoppel* against the assertion of the right.

*In re Thomson's Estate*, 362 Mo. 1043, 246 S.W.2d 791, 795 (1952) (quoting Pomeroy's Eq. Juris., 5th ed., § 419d) (our emphasis).

TIF district's creation. Even if so,[7] the reasoning of those cases remains persuasive:

> [I]t does not follow [from the appellant county's argument] that the subsequent enactments of specially designated sales taxes renders them exempt from allocations under the TIF formula. Having ascertained that the legislature intended by its enactment of the TIF Act to create an exception to the requirement that certain sales taxes be devoted only to specified purposes, that intent presumably applies to any increased tax revenues from the increased economic activity in the TIF District unless such revenues are specifically exempted from allocation either in the TIF Act itself or in the sales tax enabling legislation.

> Moreover, St. Louis County's argument completely ignores the other basis for the *Quiktrip* decision, that the legislature had seen fit to exclude certain specified taxes from the TIF allocation required by Sec. 99.845 and thus presumably did not intend to exclude any others.

*Lohman*, 966 S.W.2d at 359. *Lohman* also emphasized "the Missouri Supreme Court's conclusion in *Quiktrip* that the taxes specifically excluded in Sec. 99.845 are the only taxes the legislature intended to exclude." *Id.*

Board concedes that E–911 taxes are not invulnerable to TIF capture. They are not "specifically excluded in Sec. 99.845," which per *Quiktrip* "are the only taxes the legislature intended to exclude." *Lohman*, 966 S.W.2d at 359.

We are not persuaded by Board's strained arguments not to follow *Quiktrip* and *Lohman*,[8] especially in the absence of case law or legislative action suggesting a different view. We deny Point IV and affirm the judgment.

JEFFREY W. BATES, J., and DON E. BURRELL, C.J., concur.

---

7. According to Board, City claims that *Lohman did* involve taxes approved after creation of a TIF district. We do not so interpret City's argument. At any rate, we assume *arguendo* that the taxes predated the TIF district in *Lohman*.

8. We disregard City's new arguments raised for the first time on appeal. *Sheedy v. Missouri Hwy. & Transp. Comm'n*, 180 S.W.3d 66, 70–71 (Mo.App.2005).