

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI ex rel. CITY OF OF MARYLAND HEIGHTS, | ) ) ) | No. ED109544 |
| Appellant, | ) ) | Appeal from the Circuit Court of St. Louis County |
| vs. | ) ) | 20SL-CC00959 |
| MIKE JAMES, MIKE DEVEREUX, MARGARET HART-MAHON, GAIL CHOATE, PAUL HAMPEL, PATTY BEDOROUGH, FLETCHER WELLS, DEANNA VENKER, DEBORAH SALBERG, ANDREW DURKET, RON ORR, DAVE DOTSON and SAM PAGE, | ) ) ) ) ) ) ) ) ) ) | Honorable Thomas C. Albus |
| Respondents. | ) | Filed: April 12, 2022 |

Michael E. Gardner, P.J., James M. Dowd, J., and Lisa P. Page, J.

## Introduction

In this case of first impression, Appellant City of Maryland Heights (Maryland Heights) appeals the summary judgment entered in favor of Respondents on Maryland Heights' Rule 97.03[1] petition for writ of prohibition. In its petition, Maryland Heights sought to void the decision of the 2019 Tax Increment Financing Commission of the City of Maryland Heights (TIF

---

[1] All rule references are to the Missouri Supreme Court Rules (2020) unless otherwise indicated.

Commission)[2] which denied Maryland Heights' proposed TIF-financed redevelopment plan because the TIF Commission's membership was improperly constituted under the statute that controls our analysis here - section 99.820.[3] Subsections 2 and 3 of that statute provide, *inter alia*, two distinct formulas to configure the membership of TIF commissions created by municipalities with subsection 2 pegged to whether the population of the county in which the municipality is located is over 900,000 and subsection 3 to when the county's population is over 1 million.[4]

According to subsection 2, when an applicable county's population is more than 900,000, TIF commissions created by municipalities located in that county shall consist of six members appointed by the municipality's mayor, three members appointed by the county executive, and three members appointed by the affected school districts. Pursuant to subsection 3, however, when the county's population is more than 1 million, the county executive appoints six members instead of the three allowed in subsection 2, the municipality's mayor appoints three members instead of six, and the school districts continue to appoint three.

In granting summary judgment against Maryland Heights, the trial court ruled that the TIF Commission here was properly constituted pursuant to subsection 3 even though St. Louis County's population at the time of its creation in 2019 was more than 900,000 but less than 1 million, which is the population threshold that triggers the application of subsection 2, *not*

---

[2] Respondents are the 12 individual members of the 2019 Tax Increment Financing Commission of the City of Maryland Heights along with St. Louis County Executive Sam Page.

[3] All statutory references are to the Revised Statutes of Missouri (2016) unless otherwise indicated.

[4] St. Louis County's population according to the 2000 census was 1,016,315, according to the 2010 census was 998,954, and according to the 2020 census was 1,004,125. *See Matter of Missouri-American Water Company*, 516 S.W.3d 823, 826 n. 4 (Mo. banc 2017) (Missouri courts can take judicial notice of population figures listed in each U.S. census.).

subsection 3. In reaching its conclusion that subsection 3 nevertheless applied, the trial court relied on section 1.100.2, as amended in 2017, which provides, *inter alia,* that for laws that apply to a county based on whether the county's population has reached a certain threshold, once the county has attained that threshold (or had that population threshold at the time the law was passed), the county is effectively locked in to that law's application regardless of whether the county's population shifts and no longer satisfies the population threshold. Section 1.100.2.

The trial court reasoned that the legislature's 2017 amendment to section 1.100.2, which made that particular provision applicable to *counties* for the first time,[5] meant that since St. Louis County's population exceeded 1 million when subsection 3 was added to section 99.820 in 2008, the application of subsection 3 to TIF commissions created in St. Louis County was locked in and the County's 2010 population drop to below 1 million was irrelevant.

We agree with the trial court's reasoning and affirm the judgment.

### Background

In the spring of 2019, Maryland Heights decided to move forward with its existing plan to redevelop a portion of a floodplain located within its boundaries known as the Maryland Park Lake District.[6] In May, Maryland Heights' mayor notified the St. Louis County executive, Respondent Sam Page, that Maryland Heights was creating a TIF Commission for the project pursuant to section 99.820, and requested that County Executive Page make his appointments to the 12-member TIF Commission. In the following months, Page appointed six members to the

---

[5] Until August 27, 2017, this particular provision of section 1.100.2 had applied only to "a city not located in a county."

[6] *See* City of Maryland Heights, *Maryland Park Lake District Comprehensive Plan*, (adopted May 24, 2016), available at https://www.marylandheights.com/Community%20Development/Comprehensive%20Plan/07-Comp%20Plan%20Maryland%20Park%20Lake%20District.pdf.

3

TIF Commission, the Maryland Heights' mayor three, and the relevant school districts the remaining three.[7] This makeup is consistent with subsection 3's dictates.

Between September 2019 and January 2020, the TIF Commission held five public meetings on the redevelopment plan during which they received opinions and testimony from approximately fifty members of the public. At its final meeting, the TIF Commission voted seven to five to reject Maryland Heights' motion to approve the redevelopment plan.

On February 21, 2020, Maryland Heights filed its writ petition against Respondents seeking to prevent the TIF Commission's decision from taking effect. Respondents moved to dismiss pursuant to Rule 55.27 and Maryland Heights moved for summary judgment on its writ petition. On March 9, 2021, the trial court denied Maryland Heights' summary judgment motion but granted summary judgment in favor of Respondents after converting Respondents' motion to dismiss into a motion for summary judgment. Maryland Heights now appeals.

**Standard of Review**

"Although denials of writ applications are generally not appealable, when a preliminary writ has been issued by the circuit court, and the preliminary writ is then quashed, the order quashing the writ is generally an appealable final judgment." *State ex rel. Lehmann v. Fox C-6 School District*, 565 S.W.3d 202, 205 (Mo. App. E.D. 2018). Inasmuch as Rule 97 provides that circuit court proceedings in prohibition are governed by the rules of civil procedure, we look to our general rules and standards applicable to summary judgment to adjudicate this appeal. *See* Rule 97.01 ("In all particulars not provided for by the foregoing provisions, proceedings in

---

[7] On June 20, 2019, Page appointed four members: Respondents Hart-Mahon, Salberg, Choate, and Durket. On August 16, 2019, he appointed Respondent Hampel, and on December 18, 2019, he appointed Respondent Venker.

4

prohibition shall be governed by and conform to the rules of civil procedure and the existing rules of general law upon the subject.")

The propriety of summary judgment is purely an issue of law and, as such, our review is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The Missouri Supreme Court recently outlined the applicable standard of review for summary judgment in *Green v. Foothighiam*:

> The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment de novo. In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law.
> ...
> The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record.

606 S.W.3d 113, 115 (Mo. banc 2020).

Statutory interpretation is a question of law which we review *de novo* on appeal. *Lewandowski v. Alabama Housing Finance Authority*, 2021 WL 4432601, at *3 (Mo. App. E.D. 2021).

## Discussion

### 1. Introduction.

Maryland Heights brings three points of error: (1) that the trial court erred by retroactively applying the 2017 version of section 1.100.2 to section 99.820; (2) that the trial court's retroactive application of section 1.100.2 to section 99.820 constructively repealed subsection 2 by rendering its language inoperable; and (3) that the trial court failed to adhere to

5

Rule 55.27(a)'s requirements to properly convert Respondents' motion to dismiss into a motion for summary judgment.

### 2. Tax increment financing commissions.

In general, tax increment financing is the statutory mechanism that allows for public financing of private redevelopment projects with the goal that the projects generate tax revenues that exceed the revenues that had been generated before the redevelopment. *City of State Charles v. State*, 165 S.W.3d 149, 151 (Mo. banc 2005). Enacted in 1982, the Real Property Tax Increment Allocation Redevelopment Act, or TIF Act, authorizes cities and counties to adopt a redevelopment plan that provides for the redevelopment of a designated area, and to use TIF to fund a portion of the project's costs. *See State ex. rel. City of Monett v. Lawrence County*, 407 S.W.3d 635 (Mo. App. S.D. 2013); *State ex rel. Village of Bel–Ridge v. Lohman*, 966 S.W.2d 356, 357 (Mo. App. E.D. 1998) ("The TIF Act authorizes municipalities to adopt and finance redevelopment plans for blighted areas with the purpose to create in such areas new and substantial sources of sales tax revenue.")

Before tax increment financing may be implemented (1) the municipality must create a TIF commission pursuant to the statutory requirements and guidelines set forth in section 99.820; (2) a redevelopment plan – including a description of the redevelopment area and the redevelopment project(s) therein – must be prepared; (3) the TIF commission must have at least one public hearing, hold a vote, and make any relevant recommendations to the municipality pertaining to the redevelopment plan; and (4) the municipality must adopt an ordinance approving the redevelopment plan and its terms. *See* section 99.820.4. It is the first step in this process – the creation of the TIF Commission under section 99.820 – on which Maryland Heights bases its appeal.

6

## 3.    Analysis.

The dispositive issue in this case is whether section 1.100.2's population-savings provision, as amended in 2017 to include counties in its application, applies to the 2008 amendment to section 99.820 which added subsection 3 to that statute. In accord with the trial court, we conclude that it does. That means that since St. Louis County's population exceeded 1 million in 2008 when subsection 3 was added to section 99.820, subsection 3's method for selecting the members of TIF commissions created by municipalities located in St. Louis County became fixed and St. Louis County's 2010 population drop below 1 million was rendered irrelevant by operation of section 1.100.2.

> Section 1.100.2, provides, in relevant part:
>
> Any law which is limited in its operation to counties, cities or other political subdivisions having a specified population or a specified assessed valuation shall be deemed to include all counties, cities or political subdivisions which thereafter acquire such population or assessed valuation as well as those in that category at the time the law passed. **Once a city, county, or political subdivision has come under the operation of such a law a subsequent change in population shall not remove that city, county, or political subdivision from the operation of that law** regardless of whether the city, county, or political subdivision comes under the operation of the law after the law was passed.

(Emphasis added). By its plain language, section 1.100.2 saves a political subdivision from falling outside the operation of a previously applicable population-based statute due to a population change. There is nothing in the language of this statute indicating that its population-savings provision was not intended to apply to situations like the present one.

Because St. Louis County's population was greater than one million inhabitants when subsection 3 was added to section 99.820 and became effective, it was covered by that subsection. *See* section 1.100.2. Under section 1.100.2, St. Louis County's subsequent loss in population did not remove it from the operation of subsection 3. *Cf. State ex rel. McNeal v. Roach*, 520 S.W.2d 69, 74-76 (Mo. banc 1975) (applying section 1.100 to conclude that

7

population loss could not remove St. Louis City from operation of population-based law because legislature's intent was that population decrease would not affect applicability of such laws); *Nicolai v. St. Louis*, 762 S.W.2d 423, 426 (Mo. banc 1988). The TIF Commission appointments at issue complied with subsection 3, and the circuit court properly entered summary judgment in favor of Respondents.[8]

We now turn to Maryland Heights' various arguments on appeal. Maryland Heights first argues that sections 99.820 and 1.100.2 are in conflict and section 99.820 should prevail since it is a specific statute and section 1.100.2 is a statute of general application. *See Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 668 (Mo. banc 2010). We are unpersuaded because we discern no textual conflict or facial inconsistency between those two statutes that would require us to reach the specific versus general statutory analysis. *See id.* at 667. Rather, section 1.100.2 provides the clarification needed to determine whether and when, under section 99.820, St. Louis County should be considered a county with a population exceeding one million inhabitants.

Next, Maryland Heights contends that the application of the 2017 amendment to section 1.100.2 to section 99.820 results in the implied repeal of subsection 2. We disagree. "[R]epeals by implication are disfavored" and courts should not find a repeal by implication if "by any fair interpretation both statutes may stand" and the "two provisions are not irreconcilably inconsistent." *Id.* (internal citation omitted). Here, both statutes can be interpreted to stand together. And contrary to Maryland Heights' contention, section 1.100.2 does not render section 99.820.2 meaningless. Simply because St. Louis County was saved from falling out of

---

[8] Our holding here renders moot Respondents' argument that Maryland Heights should be estopped from seeking to void the TIF Commission's decision because Maryland Heights initiated creation of the Commission, actively participated in its work, and only complained after the Commission voted to deny their redevelopment plan.

8

subsection 3 once it attained the one-million-inhabitants threshold does not mean that no other political subdivision could ever come within subsection 2's remit. Because section 99.820 and section 1.100.2 are not in conflict, they operate concurrently and should be read in harmony. *See id.* at 668.

Maryland Heights next argues that the trial court's application of section 1.100.2 to this case was an impermissibly retrospective application of the law. Maryland Heights contends that applying the population-savings provision to "keep" St. Louis County under the coverage of subsection 3 of section 99.820 was improperly retroactive because the amendment at issue was passed in 2017 and St. Louis County's relevant population decline occurred in 2011 as reflected by the 2010 census. We disagree. The first flaw we see in Maryland Heights' argument is that the 2017 amendment to section 1.100.2 to bring counties within its application were in effect at the time the TIF Commission was constituted in 2019. And that section, of course, provides that a subsequent population change does not affect a county's inclusion within the remit of a population-based statute if that county had acquired the necessary population threshold. *See* section 1.100.2. As St. Louis County had acquired the one-million-inhabitant threshold of section 99.820.3 when subsection 3 was added, section 1.100.2 instructs that it is subsection 3 that applies even though St. Louis County had fewer than one million inhabitants at the time the TIF Commission was formed in 2019.

The second flaw in Maryland Heights' argument that the trial court's application of section 1.100.2 was impermissibly retroactive is found in the language of section 1.100.2 itself. There, the legislature demonstrated its intention that this section be backward-looking and that courts should consider previous and future census data given its use of both the present and past tense—*e.g.*, the instruction that any population-based law "shall be deemed to include all

9

counties ... which **thereafter acquire** such population or assessed valuation as well as those in that category **at the time the law passed.**" Section 1.100.2; *cf. Jerry-Russell Bliss, Inc. v. Hazardous Waste Mgmt. Comm'n*, 702 S.W.2d 77, 81 (Mo. banc 1985). Moreover, contemplating such past facts is not improperly retrospective under the black-letter law because it does not impair any vested rights or change the legal effect of past transactions by imposing a new obligation or disability. *See Jerry-Russell Bliss*, 702 S.W.2d at 81; *Dial v. Lathrop R-II Sch. Dist.*, 871 S.W.2d 444, 447 (Mo. banc 1994). Instead, section 1.100.2 looks only to a county's characteristics at the present and answers the question of whether, at that current moment, that county should be deemed to fall within a specific population-based statute. *See Jerry-Russell Bliss*, 702 S.W.2d at 81 ("A statute is not [impermissibly] retrospective or retroactive, however, because it relates to prior facts or transactions but does not change their legal effect, or because some of the requisites for its action are drawn from a time antecedent to its passage, or because it fixes the status of an entity for the purpose of its operation."). Therefore, we find the application of this 2017 law to actions taken in 2019 was not retroactive. *See Accident Fund Ins. Co. v. Casey*, 550 S.W.3d 76, 81-82 (Mo. banc 2018); *Corvera Abatement Techs., Inc. v. Air Conservation Comm'n*, 973 S.W.2d 851, 856 (Mo. banc 1998).

In its third point, Maryland Heights claims the trial court erred in connection with its conversion of Respondents' Rule 55.27(a)(6) motion to dismiss into a motion for summary judgment. We deny this point and find that an extended opinion on the issue would have no precedential or jurisprudential value. Pursuant to Rule 84.16(b), we have provided the parties with a memorandum, for their information only, setting forth the reasons for our decision on Maryland Heights' third point.

·

10

## Conclusion

For these reasons, we affirm the judgment of the trial court.

_____
James M. Dowd, Judge

Michael E. Gardner, P.J. and
Lisa P. Page, J. concur.

11